NO. 07-01-061-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 19, 2002

______________________________

ROY CASTILLO,

Appellant

v.

THE STATE OF TEXAS, 

Appellee

_________________________________

FROM THE 181
ST
 DISTRICT COURT OF POTTER COUNTY;

NO. 40,537-B; HON. JOHN BOARD, PRESIDING

_______________________________

Before Boyd, C.J., Quinn and Johnson, J.J.

Roy Castillo (appellant) was convicted by a jury of murder.  Through seven issues, he alleges that 1) the jury charge was improper, 2) by omitting an instruction on transferred intent 
viz
 the lesser included offense of manslaughter, the trial court commented on the weight of the evidence, 3) the evidence was legally and factually insufficient, and 4) the trial court erred in admitting an autopsy report since it was hearsay.  We affirm the judgment. 

Background

After being involved in a fight at a local pool hall and its adjacent parking lot, appellant and a friend drove to appellant’s home to obtain firearms, namely a pistol-grip shotgun and a 9mm pistol.  Then they returned, with the weapons, to the scene of the fight.  Upon arriving at same, the two exited their vehicle and began shooting at a black car.  Inside the car sat various people including Ambrose Bustos (Bustos), one of the participants in the earlier fight, and Julian Moreno (Moreno).  The latter was struck in the head by a bullet and killed.  

When appellant later discovered that someone had died as a result of the shooting, he threw the shotgun, the pistol, and its ammunition clip in T-Anchor Lake.  In his confession to police, appellant admitted firing his pistol at the car and throwing the weapons in the lake.  The weapons were later recovered from the lake.

The State indicted appellant for murdering Moreno.  One of its theories at trial involved the concept of transferred intent.  That is, the State attempted to show that though appellant and his friend intended to kill Bustos, they succeeded in murdering Moreno.  When both litigants rested their respective cases, the court charged the jury.  Included therein were paragraphs informing the jury that they could convict appellant for murder if they found he intentionally or knowingly caused the death of Moreno or if he intended to kill Bustos but actually killed Moreno.  So too did it instruct the jury on the lesser included offense of manslaughter.  The jury eventually found appellant guilty of murder.

Issue One – Improper Jury Charge

Appellant initially contends that the trial court’s instruction concerning transferred intent was improper.  This is allegedly so for three reasons.  First, the theory was not mentioned in the indictment.  Second, the trial court was obligated to inform the jury that it “must find that any actions taken by [him] to show transferred intent must be done knowingly and intentionally.”
  And, third, while the instruction described the deadly weapon with which appellant intended to kill Bustos, it failed to describe the particular deadly weapon which resulted in Moreno’s death.
   We overrule the contentions.

As to the need to plead transferred intent in the indictment as a prerequisite to mentioning it in the charge, we cite 
Dowden v. State
, 758 S.W.2d 264 (Tex. Crim. App. 1988) and 
In re K.W.G.
, 953 S.W.2d 483 (Tex. App.–Texarkana 1997, pet. denied).  Each holds that the theory may be incorporated in the charge though omitted from the indictment.  
Dowden v. State
, 758 S.W.2d at 274; 
In re K.W.G.
, 953 S.W.2d at 488.

As to the remaining contentions, we feel the need to quote pertinent aspects of the indictment and charge.  Through the former, the State accused appellant of “intentionally and knowingly caus[ing] the death of . . . Julian Moreno, by shooting the said . . . Moreno with a deadly weapon, . . . a firearm.”  Through the latter, 
i.e.
 the charge, the court informed the jury that:

[1] [n]ow, if you find from the evidence beyond a reasonable doubt that on or about the 24
th
 day of February, 1999, in Potter County, Texas, the Defendant, ROY CASTILLO, did then and there intentionally or knowingly cause the death of an individual, namely Julian Moreno, by shooting the said Julian Moreno with a deadly weapon, to-wit: a firearm, you will find the defendant guilty of murder. . . [;]

[2] [y]ou are further instructed that a person is criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated or risked is that a different person was injured harmed or otherwise affected. . .[; and]

[3] [n]ow bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, ROY CASTILLO, on or about the 24
th
 day of February, 1999, in the County of Potter and State of Texas, intending to cause the death of an individual, Ambrose Leon Bustos, by shooting the said Ambrose Leon Bustos with a deadly weapon, to-wit: a firearm, did then and there cause the death of an individual, namely, Julian Moreno, by shooting the said Julian Moreno with a deadly weapon, you will find the defendant guilty of the offense of murder and so say by your verdict.

With these provisions in mind, we turn to the arguments.

Regarding the supposed need to instruct the jury that the “acts taken by appellant to show transferred intent must be done knowingly or intentionally,” we see two possible interpretations of the appellant’s contention.
(footnote: 1)  The first is that the court must inform the jury that it can convict only if the actions directed towards the individual whom appellant actually wanted to kill were taken with the requisite 
mens rea
.  Here, the trial court did just that.  It informed the jurors that they could convict only if appellant caused the death of Moreno while “
intending
 to cause the death of an individual, Ambrose Leon Bustos . . . .”
(footnote: 2)   (Emphasis added).  

The second interpretation of appellant’s argument involves the supposed need to state that appellant acted with a particular 
mens rea
 towards Moreno as he caused the death of Moreno while actually trying to kill Bustos.  We find this proposition meritless based upon a plain reading of §6.04(b) of the Penal Code.  Though euphemistically called “transferred 
intent
,”
 the concept espoused in that section of the Code does not deal with intent or any other 
mens rea
.  Rather, it depicts an effort by the legislature to  criminalize an act which resulted in injury or harm to someone other than the person to whom the injury or harm was actually directed.  As much can be garnered from the wording of the statute.  In stating that one “is 
nevertheless
 criminally responsible for 
causing a result
  if the only difference between what actually occurred and what he [intended, knew or risked] is that a different person was” harmed or injured, the legislature was addressing the results of the conduct.  
Tex. Pen. Code Ann.
 §6.04 (b)(2) (emphasis added).  That is, it was telling the public that it did not matter who was hurt or affected by the act.  As long as the accused intended, knew or risked hurting or affecting a particular person
 
and 
someone
 was affected, the accused would be culpable for the crime he tried to commit.  So, acting with a particular 
mens rea
 
viz-a-viz
 the actual victim was and is unimportant, and such a 
mens rea
 need not be alleged nor proved.  Indeed, if this were not so, and if the State were required to allege and prove that the accused acted with a particular 
mens rea
 towards the ultimate victim, then their concept of transferred intent would be superfluous.
(footnote: 3)      

Finally, we address appellant’s contention about describing the nature of the deadly weapon used to cause the death of Moreno.  He believes that it was not enough to simply allude to it as a deadly weapon; this was so despite the trial court’s description of it as a “firearm” when alluding to the deadly weapon with which appellant intended to kill Bustos.  This argument also fails for reasons similar to those mentioned in the immediately preceding paragraph.  Again, the gist of §6.04(b) involves criminalizing conduct resulting in someone’s injury or harm, irrespective of whether the person harmed or injured was the intended victim.  And, in telling the jury what they must find to convict when §6.04(b) is involved, the trial court need only allude to the actual victim as the person who suffered harm or injury meant for another.  The expressed wording of §6.04(b) requires nothing more when referring to the actual victim.  So, the trial court at bar was not obligated to tell the jury that to convict appellant, it had to find that he used a “firearm” to kill Moreno; this is so since the nature of the deadly weapon had already been described in referring to the acts of appellant which were directed at Bustos.

Issue Two – Comment on the Evidence

Next, appellant alleges that the trial court failed to incorporate the concept of transferred intent into its instruction on the lesser included offense of manslaughter.  And, because it did not, the instruction given was a comment on the evidence.  We disagree and overrule the point.

First, it has been held that the failure to charge the jury on transferred
 intent
 when submitting an instruction on manslaughter is not a comment on the weight of the evidence.  
Juarez v. State
, 886 S.W.2d 511, 515 (Tex. App.–Houston [1
st
 Dist.] 1994, pet. ref’d).  Second, to the extent that the case cited by appellant, 
Garrett v. State
, 
624 S.W.2d 953 (Tex. App.–San Antonio 1981), 
rev’d on other grounds
, 642 S.W.2d 779 (Tex. Crim. App. 1982), suggests otherwise, we note that the 
Garrett
 holding was dependent upon the nature of the charge given by the trial court.  There, “the State’s theory [regarding manslaughter] relied upon transferred intent.”  
Id.
 at 957.  Thus, the appellate court concluded that the jury had to be told about that issue via the charge.

Here, reference to manslaughter in the charge did not implicate transferred intent.  That is, the jury was not told that it could find appellant guilty of same, if it concluded that his reckless conduct was directed at one person but resulted in injuring someone else.
(footnote: 4)  Instead, the trial court instructed that appellant could be found guilty of manslaughter if appellant recklessly discharged a firearm “in the direction of” the particular decedent and the discharging of the weapon caused the death of the decedent.  In the trial court’s focusing upon appellant’s alleged reckless discharge of the gun towards the decedent as opposed to some third party whom appellant missed, there was no need to inform the jury that appellant could be held responsible for the crime even though he missed this unmentioned third party and struck the decedent.  Simply put, the circumstances described in the application paragraph at issue had nothing to do with transferred intent.  So, 
Garrett
 was and is inapposite. 

Issues Four, Five, and Six – Sufficiency of the Evidence

Appellant next challenges the legal and factual sufficiency of the evidence supporting the verdict.  He claims that the evidence was insufficient to demonstrate that he intentionally and knowingly 1) shot at Bustos, 2) tried to cause the death of Bustos, and 3) caused the death of Moreno.  We overrule the contentions.

Standard of Review

The standards of review applicable to questions of legal and factual sufficiency are well-settled and need no explanation.  We find it adequate to merely cite the parties to 
King v. State
, 29 S.W.3d 556 (Tex. Crim. App. 2000) and 
Clewis v. State
, 922 S.W.2d 126  (Tex. Crim. App. 1996).
(footnote: 5)  

Application of Standard

A person commits murder if he intentionally or knowingly causes the death of an individual. 
Tex. Pen. Code. Ann
. §19.02(b)(1)(Vernon 1994).  Furthermore, a person acts intentionally or knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.  
Tex. Pen. Code. Ann.
 §6.03(a) and (b) (defining culpable mental states of intentionally and knowingly).  Yet, as alluded to in our discussion of the preceding issue, one may still be held liable for murder if he kills someone other than the person he intended to kill.  
See 
Tex. Pen. Code Ann.
 §6.04(b)(2) (discussing this concept).  In that regard, all the State need prove is that the only difference between what actually occurred and what he intended or knew would occur is that he caused the death of someone other than the one he tried to kill.  
Id.
  With this said, we now peruse the evidence before us.

Of record, we find evidence illustrating that: 1) appellant and Moreno were both present at the bar the night of February 24, 1999; 2) each was there with a group of friends and/or family members; 3) Junior, one of appellant’s friends, was hit in the head with a billiard ball by Bustos, one of the individuals in Moreno’s group; 4) the fight in the pool hall spilled out into the parking lot, where a number of vehicles were damaged, 5) appellant’s car was damaged by Bustos; 6) appellant left the bar with Junior and proceeded to appellant’s house; 7) appellant retrieved a shotgun and pistol from underneath his bed and gave the shotgun to Junior; 8) appellant and Junior then returned to the bar; 9) the appellant recalled seeing “people around a black car;” 10) appellant drove around to the back of the establishment; 11) at the time, the victim and Bustos were in a black car along with four other people; 12) when the appellant drove up, people were attempting to enter the black car; 13) the appellant and Junior exited their vehicle, aimed their weapons at the black car, and began shooting; 14) after discharging the weapons, the two drove back to appellant’s house and hid the guns; 15) that night Moreno died of a bullet wound to the head; 16) the bullet removed from his head was of the same caliber as the ammunition fired from appellant’s pistol; 17) Bustos, who allegedly hit Junior with a billiard ball, had been sitting in the passenger seat of the car at the time of the shooting; 18) as a result of the shooting, the window where Bustos had been sitting was shot out; 19) Bustos’ window was the only window shot out; 20) the black car did not have tinted windows; 21) when the shooting began at least one door of the black car was open; 22) the interior light of the car had also been in working condition that night; 23) the parking lot was well lit at the time of the shooting; 24) Bustos saw the shooters kneeling and aiming at the car; 25) when appellant discovered that someone had died as a result of the shooting he threw the weapons in T-Anchor Lake; and 26) appellant later confessed to shooting at the car in the parking lot and throwing the weapons in the lake.  From this, a jury could conclude, beyond reasonable doubt, that appellant caused the death of Julian Moreno, although he intended to cause the death of Ambrose Leon Bustos.  That is, a rationale jury could have reasonably inferred that appellant intended to shoot and kill Bustos in retaliation for the earlier happenings, saw him in the car, fired, and instead killed Moreno.  Thus, appellant’s conviction for murder is supported by legally sufficient evidence.  

That the evidence of guilt was not free of contradiction, that appellant denied intending to kill anyone, that he denied knowing anyone was in the black car, and that the credibility of witnesses may have been subject to question does not require us to conclude that the verdict was factually insupportable.  Those circumstances merely create issues for the jury to resolve. And, based upon our review of the entire record, we cannot say that the verdict was clearly wrong or manifestly unjust.  Thus, the conviction also enjoyed the support of factually sufficient evidence.

Issue Seven – Admission of the Autopsy Report

Lastly, appellant claims that the trial court erred in admitting an autopsy report into evidence.  It allegedly did so because the report was hearsay and the State failed to lay a proper predicate for its admission as a business record under Texas Rule of Evidence 803(6).  We overrule the point.

Irrespective of whether the State presented evidence satisfying the elements for admitting a document as a business record, the trial court had before it an autopsy report.  This is of significance for such a report has been held to be, as a matter of law, a public record.  
Butler v. State
, 872 S.W.2d 227, 237-38 (Tex. Crim. App. 1994),
 cert. denied
, 513 U.S. 1157, 130 L.Ed. 2d 1079, 115 S.Ct. 1115 (1995).  And, as a public record, it is admissible as an exception to the hearsay rule.  
Id. 
at 238.  So, because the standard of review is one of abused discretion, 
Wyatt v. State
, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000)
, and the report was admissible irrespective of Rule 803(6), we conclude that the trial court did not err in admitting it.  
See Romero v. State, 
800 S.W.2d 539, 543 (Tex. Crim. App. 1990) (holding that an appellate court may affirm a trial court’s decision to admit evidence for reasons other than those mentioned to the court).   

Accordingly, we affirm the judgment of the trial court.

Brian Quinn

    Justice

Publish.
ßÑ Although the Court of Criminal Appeals has yet to expressly decide whether an accused’s Sixth Amendment right to counsel during post-indictment interrogation is a “waivable-only” right, their opinion in 
Swain v. State
, 181 S.W.3d 359 (Tex.Crim.App. 2005), is instructive.  In 
Swain
, the appellant asserted, on appeal, that the police violated his right to counsel under the Fifth and Sixth Amendments when they continued to question him after the accused had appeared before a magistrate and requested counsel be appointed.  
Id.
 at 365.  In his written motion to suppress submitted to the trial court, the accused asserted a violation of his right to counsel and his right against self-incrimination under the Fifth, Sixth, and Fourteenth amendments of the United States Constitution and article one, §§ 10 and 19 of the Texas Constitution.  
Id.  
Because the accused’s global statements consisting of little more than citations to constitutional and statutory provisions failed to assert a specific complaint, the 
Swain
 Court held that the accused’s “global statements in his pretrial motion to suppress were not sufficiently specific to preserve the arguments he [was] making on appeal” under Rule 33.1 of the Texas Rules of Appellate Procedure.  
Id
.
(footnote: 12) 

Again, based upon these precedents and the procedural safeguards in place, we find that the right to have counsel present during post-indictment defendant-initiated interrogations is not a waivable-only right.  Therefore, because Appellant failed to make a timely objection to the admission of his inculpatory statements, he failed to preserve the argument on appeal.  

 
 
II. Waiver

Furthermore, even if the right to have counsel present during post-indictment defendant-initiated interrogations is a “waivable-only” right, the record establishes Appellant did not forfeit that right by inaction but instead affirmatively waived that right by initiating contact.  The uncontroverted evidence indicates Appellant initiated the communication with Officer Koontz under circumstances evidencing a voluntary, knowing, and intelligent 
desire to engage in a generalized discussion of his ongoing investigation for purposes of his own personal benefit.  
See Oregon v. Bradshaw
, 462 U.S. 1039, 1045-46, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); 
Baldree
, 784 S.W.2d at 685-86.

  
 The record reveals that Appellant alone requested the meeting with Officer Koontz.  At the meeting, Appellant indicated he wished to negotiate a deal permitting him to avoid serving time in prison in return for giving information.  Appellant’s actions and statements indicated that he wished to “go it alone” without counsel and open up a more generalized discussion related to Officer Koontz’s investigation. 

Further, there is no evidence of record that Officer Koontz “deliberately elicited” incriminating information from Appellant.
(footnote: 13)  Officer Koontz neither coerced, threatened, promised nor induced Appellant to make any incriminating statements.  The record is uncontroverted that Officer Koontz informed Appellant he could promise him nothing in exchange for the information and Appellant’s subsequent statements were made in furtherance of his unilateral desire to obtain a deal.  True, Appellant received no 
Miranda
 warnings when the conversation took place, however he was free on bail and could have left the DEA office at any moment.  
See Montejo
, 129 S.Ct. at 2090 (“When a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering . . . noninterrogation interactions with the State do not involve the ‘inherently compelling pressures,’[citation omitted]
, that one might reasonably fear could lead to involuntary waivers.”)

Accordingly, considering all the facts and circumstances surrounding Appellant’s meeting with Officer Koontz in July 2008, we find Appellant waived his Sixth Amendment right to counsel when he initiated the contact with Officer Koontz.  Appellant’s single point of error is overruled. 

Conclusion

The trial court’s judgment is affirmed.

  

Patrick A. Pirtle 

      Justice  

Publish.

FOOTNOTES
1:
What appellant means when alluding to the “actions taken by Appellant to show transferred intent” is unclear.  Thus, we are left to interpret the nature of his argument.

2:
By using the word “intending” in the application paragraph and mentioning no other 
mens rea
, it could be said that the trial court enhanced the burden of the State or restricted the jury’s ability to convict for murder.  For instance, the omission denied the factfinder the opportunity to convict if appellant acted “knowingly.”  And, such a mind set is sufficient to secure a conviction for murder.  
Tex. Pen. Code. Ann
. §19.02(b)(1)(Vernon 1994)
 (stating that a
 person commits murder if he intentionally or knowingly causes the death of an individual)
.

3:
For instance, if the State was obligated to prove that appellant intended to cause the death of Moreno while intending to kill Bustos, there would be no need to even refer to Bustos.  Intending to cause the death of Moreno and causing it would be enough to warrant conviction. 

4:
Manslaughter implicates the 
mens rea
 of recklessness.  
See 
Tex. Pen. Code Ann.
 §19.04 (Vernon 1994) (stating that a person commits manslaughter if he recklessly causes the death of an individual)
.

5:
We would note, however, that in urging legal insufficiency, the appellant should focus upon the evidence appearing of record and explain why it was not enough to support the verdict.   This is so because we cannot reverse unless we explain why that evidence was deficient. 
In the interest of T.M.
, 33 S.W.3d 341, 349 (Tex. App.–Amarillo 2000, no pet.).  It is not enough for us to merely conclude that the evidence was wanting.  So, an appellant should do more than simply allude to the evidence that favors an acquittal.  Rather, he should undertake to explain why the evidence purporting to favor conviction does not.     

12:
13: