Affirmed and Opinion filed February 10, 2004









Affirmed and Opinion filed February 10, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-01353-CR

NO.
14-00-01354-CR

____________

 

PEDRO ISREAL LOREDO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause Nos. 836,440
& 846,889

 



 

O P I N I O N

Appellant entered a plea of not guilty to the offenses of
felony murder and arson.  He was
convicted and the jury assessed punishment at thirty-five years= confinement and a $10,000.00
fine for each offense.  In six issues,
appellant contends (1) the evidence is insufficient to support his conviction
for felony murder and arson; (2) the trial court erred in its instructions to
the jury; and (3) the trial court erred in denying his motion to suppress.  We affirm.

 








Background

In February 2000, appellant, his brother, Juan Torres, and
Allen Davis worked at a McDonald=s restaurant.  Appellant and Edson Garza, the night manager
for McDonald=s, schemed to steal the weekend=s receipts from the safe in
McDonald=s.  On Sunday, February 13, 2000, Garza gave his
keys to appellant so that appellant could enter the restaurant after it  closed. 
The restaurant had two safes, one large safe and a smaller Adrop safe,@ which was welded onto the
large safe.  Garza=s keys would open the large
safe, but a computerized lock would report who had opened the safe.  Garza reported to appellant that the drop
safe contained the receipts for Friday, Saturday, and Sunday and could contain
as much as $18,000.  Appellant, Torres,
and Davis decided to attempt to break into the drop safe.  The evening before the break-in, appellant
purchased a gas torch and propane and oxygen tanks to melt the locks of the
safes. 

On February 13, 2000, appellant, Torres, and Davis picked up
Garza=s keys, bought a crowbar and a
hammer, and drove to McDonald=s.  They entered McDonald=s about 1:30 a.m. with Davis
carrying a backpack containing the torch and gas cylinders, a crowbar, and a
hammer.  To prevent fingerprints, the
trio put tape on their fingertips, but the tape fell off shortly after they
entered McDonald=s.








The McDonald=s office had a tile floor and
three tiled walls, and an office in the northeast corner with wooden cabinets
above a desk that had wooden drawers and a formica top.  The cabinets contained notebooks, work
manuals, and other papers.  A backpack
was hanging on the wall beside the desk. 
The two safes were in the office. 
Appellant attempted to pry open the drop safe with the crowbar.  After approximately twenty minutes, he
realized the crowbar would not work, so he attempted to melt the lock with the
propane torch.  In his statement to
police, appellant said , he did not know whether the papers or wood in the
office caught fire while he was attempting to melt the lock.  After approximately twenty-five futile
minutes with the torch, appellant told his brother, Juan Torres, to purchase
bolt cutters at a nearby discount store. 
Torres made the purchase and returned to the McDonald=s.  Appellant then broke the lock on the drop
safe with the bolt cutters, but discovered another safe inside the drop
safe.  Appellant eventually abandoned the
smaller safe and told Davis to take the television from the dining room.  When Davis reported the television was
anchored to the wall, Davis testified that the trio abandoned their burglary
attempt and began to Acover their tracks.@ 

According to Davis=s testimony at trial, the
burglars wiped down the surfaces in the office to Acover@ the fingerprints.  In his statement to the police, Davis said
appellant and Torres were talking about starting a fire.  At trial, Davis testified Torres Awanted to just damage
something.@  Davis testified appellant, in a further
attempt to Acover their tracks,@ went outside and broke the
drive-through window so that investigators would not know they had keys.  Before the trio departed the scene, a fire
was intentionally started inside the McDonald=s.  As a result the restaurant began to burn and
firefighters were called.  Upon arriving
at the scene, two firefighters entered the restaurant to ensure no one was
trapped inside.  While searching the
restaurant, both firefighters suffered asphyxia and died.

Appellant, Davis, and Torres were charged with felony murder
and arson and were tried together.  The
jury found all three guilty of felony murder and arson.

Sufficiency of the Evidence

In points of error one through four, appellant challenges
the sufficiency of the evidence to support his convictions for felony murder
and arson.  Appellant does not specify
whether he is challenging the evidence on legal or factual sufficiency
grounds.  In his prayer for relief,
however, appellant requests reversal and acquittal.  Because acquittal is only appropriate when a
legal sufficiency challenge is sustained, we will review the evidence under a
legal sufficiency standard.  See
Collier v. State, 999 S.W.2d 779, 786 (Tex. Crim. App. 1999).  

 

 








Standard
of Review

When reviewing legal sufficiency, we view the evidence in
the light most favorable to the verdict, asking whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Wesbrook v.
State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The jury, as trier of fact, is entitled to
resolve any conflicts in the evidence, to evaluate the credibility of witnesses,
and to determine the weight to be given any particular evidence.  See Jones v. State, 944 S.W.2d 642,
647 (Tex. Crim. App. 1996).  When, as in
this case, the trial court=s charge authorized the jury to
convict on several different theories, we will uphold the verdict of guilt if
the evidence is sufficient on any one of the theories.  Rabbani v. State, 847 S.W.2d 555, 558B559 (Tex. Crim. App.1992).

Felony Murder

In his first two issues, appellant contends the evidence is
insufficient to support a conviction of felony murder.  Felony murder is an unintentional murder
committed in the course of committing a felony. 
Tex. Pen. Code Ann. ' 19.02(b)(3); Fuentes v.
State, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999).  The elements of felony murder are:  a person (1) while in the course of
committing or attempting to commit a felony other than manslaughter or in
immediate flight from the commission or attempt, (2) commits or attempts to
commit an act clearly dangerous to human life, (3) which causes the death of an
individual.  Tex. Pen. Code Ann. ' 19.02(b)(3).  Under the law of parties, a person may be
convicted as a party to an offense if the offense is committed by his own
conduct or by the conduct of another for which he is criminally
responsible.  Tex. Pen. Code Ann. ' 7.01(a).  A person is criminally responsible for an
offense committed by the conduct of another if, acting with intent to promote
or assist the commission of the offense, he solicits, encourages, directs,
aids, or attempts to aid the other person to commit the offense.  Tex.
Pen. Code Ann. ' 7.02(a)(2). 








In point of error one, appellant asserts the evidence is
insufficient to prove he is guilty as a principal or party to felony murder
because starting the fire was an independent act of one of his co-actors done
without his knowledge.  In point of error
two, appellant asserts there is insufficient evidence that the fire was started
in the course of and in furtherance of the burglary.

The witnesses presented conflicting evidence as to how the
fire was started.  In his statement to
the police, appellant stated he may have ignited papers on the desk while using
the torch to melt the safe=s lock.  He also stated that he heard a pop after he
left the office and went to punch out the drive-through window.  Davis testified that he saw Torres start a
fire using a lighter to light papers in the cabinets in the office.  The last time Davis and appellant each looked
in the office the backpack hanging on the wall was on fire.  Andrew Barron, a professor at Rice
University, opined the torch was used to ignite wooden cabinets.  The fire investigator, Thomas Wood, concluded
that the fire was intentionally set in the cabinets. 

The jury was instructed to find appellant guilty if it found
appellant and another person or persons committed or attempted to commit
burglary and while in the course of and furtherance of the commission or
attempted commission of burglary, the other person or persons committed an act
clearly dangerous to human life, in this case, start a fire.  The evidence established that Torres
intentionally started the fire.  When a
party is not the primary actor, the State must prove conduct constituting an
offense plus an act by the defendant done with the intent to promote or assist
such conduct. Prystash v. State, 3 S.W.3d 522, 540 (Tex. Crim. App.
1999). 








The record shows appellant used the gas torch in an attempt
to melt the safe lock and admitted knowing the restaurant was on fire when they
departed.  He did not try to put it out
or call the fire department.  Morris
Contreras, a McDonald=s employee, testified appellant
called him about 4:20 a.m. and calmly told him he wouldn=t have to go to work that day
because the McDonald=s was on fire.  Davis testified that he and appellant were
concerned fingerprints remained.  The
fire helped destroy evidence of the burglary. 
Davis testified that the tape fell off their fingers shortly after they
started to work on opening the safes. 
Davis further testified that appellant gave Torres the lighter that was
used to start the fire.  When they were
getting ready to leave, Davis and appellant wiped down furniture and counters
and appellant broke the drive-through window in an attempt to Acover their tracks.@  Further, arson investigator Wood testified
the handle on the large safe was left in the unlocked position.  The defendants knew that the large safe=s electronics would record the
name of Edson Garza entering the safe in the middle of the night because they
used his key.  Therefore, by setting the
fire, the defendants attempted to avoid implicating Garza in the burglary.  In addition, the fire destroyed anything that
might have been in either safe. Therefore, the fire destroyed any evidence that
appellant stole money from the large safe. Viewing the evidence in the light
most favorable to the verdict, a rational trier of fact could have found beyond
a reasonable doubt appellant, while in the course of committing burglary, was a
party to lighting a fire, an act clearly dangerous to human life, which caused
the deaths of two firefighters. 
Appellant=s first and second issues are
overruled.

Arson








In his third and fourth issues, appellant contends the
evidence is insufficient to establish either that appellant intended to damage
or destroy the building or that the arson occurred in furtherance of the
burglary.[1]  The jury was instructed that a person commits
arson if he starts a fire with intent to destroy or damage any building (1)
knowing that it had located within it property belonging to another or (2) when
he was reckless about whether the burning would endanger the life of some
individual or the safety of the property of another.  Tex.
Pen. Code Ann. ' 28.02 (Vernon 1994); see
Act of May 29, 1993, 75th Leg. R.S., ch. 900, ' 1.10, sec. 28.02(a), 1993 Tex.
Gen Laws 3586, 3628B29 (since amended, current
version at Tex. Pen. Code Ann. ' 28.02 (a) (Vernon 2003)). 
The jury charge on arson also included the following instructions on
liability as a party:

A person is criminally responsible as
a party to an offense if the offense is committed by his own conduct, by the
conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for
an offense committed by the conduct of another if:

$                  
acting
with intent to promote or assist the commission of the offense, 

$                  
he
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense.

Mere presence alone will not
constitute one a party to an offense.

A person is also criminally
responsible for the conduct of another if,

$                  
in the
attempt to carry out a conspiracy to commit one felony,

$                  
another
felony is committed by one of the conspirators,

$                  
that
other felony was committed in furtherance of the unlawful purpose and

$                  
was one
that should have been anticipated as a result of the carrying out of the
conspiracy.  

 

These instructions comport with the Penal Code sections on
Complicity, 7.01(a), and 7.02(a)(2), (b).








The jury charge set forth seven alternative application
theories of liability for arson.[2]  When the State alleges multiple means for the
commission of the offense, allegation and proof of any of the means will be
sufficient to support the conviction. Rabbani v. State, 847 S.W.2d at
558B559.  Because we conclude the evidence is legally
sufficient to sustain appellant=s conviction as a party and
co-conspirator to the arson, we do not address the theory he was liable as a
principal.

If, in an attempt to carry out a conspiracy to commit one
felony, another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
the carrying out of the conspiracy.  Tex. Pen. Code Ann. ' 7.02(b).  Conspiracy liability attaches even though the
party did not intend for the act to occur as a result of his conduct when the
offense was committed in furtherance of the conspiracy and should have been
anticipated as a result of the carrying out of the conspiracy.  Id.; see also Wood v. State,
4 S.W.3d 85, 89 (Tex. App.CFort Worth 1999, pet. ref=d).

Here, the record shows that Torres started the fire in an
attempt to cover the trio=s participation in the
burglary.  Torres discussed wanting to
set the building on fire to Adamage something.@  The evidence supports a finding that the
parties were reckless about whether the fire would endanger the life of an
individual or the safety of another=s property.  The record further supports the conclusion
that the fire was set in furtherance of the burglary to cover the burglars= tracks and appellant should
have anticipated the fire as a result of the conspiracy to commit the
burglary.  Viewing the evidence in the
light most favorable to the jury=s verdict, we find a rational trier
of fact could have found beyond a reasonable doubt that appellant was guilty of
arson as a party.  Appellant=s third and fourth issues are
overruled.

Jury Charge

In his fifth issue, appellant contends the trial court erred
in its instruction to the jury on the offense of arson.  Specifically, appellant complains of the
improper use of a transferred intent instruction.  In the application paragraph of the charge,
the trial court instructed the jury to find appellant guilty of arson if it
found:

the defendant, Pedro Loredo, did then
and there unlawfully 








start a fire by igniting a torch

with the intent to damage or destroy a
safe and knowing that the safe had located within it property belonging to
another, and 

the only difference between what he
intended is that different property was damaged[.]

Appellant contends the above instruction is an improper use
of the doctrine of transferred intent. 
The doctrine of transferred intent is codified in section 6.04(b) of the
Texas Penal Code, which provides:

(b) A person is nevertheless
criminally responsible for causing a result if the only difference between what
actually occurred and what he desired, contemplated, or risked is that:

(1)     a different offense was committed; or

(2)     a different person or property was injured, harmed, or otherwise
affected.

 

Prior to section 6.04(b), the doctrine of transferred intent
was found in article 42 of the Penal Code, which provided:

One intending to commit a felony and
who in the act of preparing for or executing the same shall through mistake or
accident do another act which, if voluntarily done, would be a felony, shall
receive the punishment affixed to the felony actually committed.

 

Article 42, Texas Penal Code (1925).  








Section 6.04(b) retains the transferred intent of former
article 42 from which it was derived.  Rodriguez
v. State, 953 S.W.2d
342, 350 (Tex. App.CAustin 1997, pet. ref=d); Salazar v. State,
642 S.W.2d
534, 535 (Tex. App.CHouston [14th Dist.] 1982, no pet.).  Though section 6.04(b) is titled transferred intent,
it is somewhat of a misnomer because the concept does not address intent or any
other mens rea.  Rather, it
depicts an effort by the legislature to criminalize an act that resulted in a
different offense than the accused intended to commit.  See Castillo v. State, 71 S.W.3d 812, 815 (Tex. App.CAmarillo 2002, pet. ref=d). Section 6.04(b) transfers
the mens rea of a contemplated, but incomplete, offense to the offense
actually committed by mistake or accident. 
Price v. State, 861 S.W.2d 913, 916 (Tex. Crim. App. 1993).  The rationale is that public policy demands
that persons engaged in criminal activity not be exonerated Amerely because they
accidentally commit a different offense than originally contemplated.@  Sargent v. State, 518 S.W.2d 807, 810 (Tex. Crim. App.
1975).  Therefore, the intent to commit
the contemplated offense transfers to the offense in fact committed.  Ex parte Easter, 615 S.W.2d 719, 720 (Tex. Crim. App.
1981); Honea v. State, 585 S.W.2d 681, 685 (Tex. Crim. App. 1979).  

Here, the evidence is sufficient to submit an instruction to
the jury that appellant could be held responsible under the doctrine of
transferred intent as prescribed by section 6.04(b)(1) of the Penal
Code, i.e., that the only difference between what appellant intended and what
occurred was that a different offense was committed.  The error in the court=s charge occurred because the
court instructed the jury under section 6.04(b)(2), i.e., that the only
difference between what appellant intended and what occurred was that different
property was damaged.[3]

Harm Analysis

The standard to determine if the harm from the error is
sufficient to require reversal depends on whether the error was properly
preserved.  Where there was a proper
objection to preserve the error, the court only looks for Asome harm.@  Almanza, 686 S.W.2d at 171.  Where there was not a proper objection, the
appellate court looks for egregious harm. 
Id.  Here, appellant
properly objected to the charge so we will review the record for some harm.








In conducting a harm analysis, we consider the entire
charge, the state of the evidence, including contested issues and the weight of
the probative evidence, arguments of counsel, and any other relevant
information revealed by the record.  Bailey
v. State, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993).  The harmfulness of error in the jury charge
should be measured, at least in part, against the likelihood that the jury=s verdict was based on an
available alternative theory of culpability that was not affected by the
erroneous portion of the charge.  Margraves
v. State, 56 S.W.3d 673, 680 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  

First, we look to the jury charge as a whole.  Reyes v. State, 741 S.W.2d 414, 426
(Tex. Crim. App. 1987).  The abstract
portion of the jury charge correctly stated the elements of arson.  See Tex.
Pen. Code Ann. ' 28.02(a).  See Dinkins v. State, 894 S.W.2d 330
(Tex. Crim. App. 1995) (jury charge error that omitted culpable mental state in
application paragraph where definition of mental state was correct in abstract
portion of charge held not harmful).  Therefore,
this factor weighs against a finding of harm.








The trial court charged the jury with seven alternative
application paragraphs for arson: three for principal culpability, three for
party culpability, and one for conspiracy. 
In presenting its evidence, the State focused on appellant=s liability as a party to
arson, not as a principal.  At trial,
appellant argued that Torres intentionally set the fire and he was not culpable
as a principal or a party.  The state of
the evidence was such that the jury could have believed appellant was guilty of
arson either as a party, as a principal, or as a co-conspirator.  There is sufficient evidence in the record to
show that Torres started the fire in an attempt to cover evidence of the
burglary.  That evidence is sufficient to
find appellant guilty as a party.  There
is sufficient evidence that by attempting to damage the safe, which was part of
the building, appellant was guilty of arson as a principal.  In its closing argument, the State focused on
appellant=s liability as a party and
argued that the safe was a part of the building and that appellant damaged the
building by burning the safe.  Appellant
argued that he was guilty only of burglary of a building and that Torres set
the fire independent of the burglary. Further,
a transferred intent instruction enlarges a defendant=s criminal responsibility in
much the same manner as does a Aparties@ instruction.  Price, 861 S.W.2d at 915 n. 5.  In addressing charge error with regard to a
parties instruction, the Court of Criminal Appeals has found that reversal on
charge error is only necessary if the law of parties was actually necessary for
the jury to decide the case.  Black v.
State, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986).  Similarly, the charge error here is only harmful
if transferred intent was actually necessary for the jury to decide the
case.  As stated above, the jury was
given seven alternative theories for appellant=s liability for arson.  Therefore, because the charge on transferred
intent was not necessary to the jury=s decision, this factor weighs
against a finding of harm.  Considering
the appropriate factors, the trial court=s failure to properly apply the
law to the facts in the transferred intent application paragraph of the charge
was harmless error.  Appellant=s fifth issue is overruled.

Motion to
Suppress

 

In
his sixth issue, appellant contends the trial court erred in admitting at the
punishment phase his recorded statement in which he confessed to three
extraneous offenses.  The day after
appellant made his initial statement, Officer Colleen Nelson of the Houston Police
Department interviewed him.  After
Officer Nelson read appellant his rights, the following exchange took place.

 

Officer Nelson: 
It=s 5:00 o=clock in the morning is when the
robbery occurs.  I want to know what you
have to say about it.  While you say
anything I want you to understand this is your opportunity to tell me your part
in it, what you had to do with it.  An
hour from now if you change your mind, an hour from now if you want to talk to
me about it again it=s too late.  This is your chance to tell me what you had
to do with the robbery, okay.

 

Appellant: 
Can I ask for a lawyer now?

 








Officer Nelson: 
You bet.  You bet.  You certainly can.  And when you ask for a lawyer that means I=m not going to talk to you anymore,
okay.  I=m not going to talk to you anymore
about this.  I=m going to take you back to the jail
just exactly where I got you.  

 

Appellant: 
What are we charged for right now?

 

Appellant
then proceeded to discuss the offense with Officer Nelson.

The
trial court made the following findings with regard to appellant=s motion to suppress: 

The next day, Officer Colleen Nelson
of the HPD Robbery Division, took Loredo out of the city jail for the purpose
of interviewing him about robberies that had occurred at McDonald=s restaurants.  She conducted the interview on videotape and
warned Loredo of his rights under Article 38.22 at the beginning of the
tape.  He understood those warnings, and
although he asked generally about a lawyer, he did not invoke any of his
rights.

 

No one threatened Loredo or coerced
him to make a statement, and no one promised him anything to induce him to make
a statement.  His audio- and
video-recorded statements were made voluntarily and are admissible in evidence.

 

Appellant
contends that by asking whether he could ask for a lawyer he invoked his Fifth
Amendment right to counsel.  He contends
Officer Nelson violated that right by continuing the interview.

Standard of Review

We
review a trial court=s decision to admit or exclude
evidence under an abuse of discretion standard. 
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000).  Under this standard, the trial
court=s findings of fact are given Aalmost total deference@; however, we review the trial
court=s application of the law to
these facts de novo.  Carmouche
v. State, 10 S.W.3d 323, 327B28 (Tex. Crim. App. 2000).  The trial court=s ruling will be upheld as long
as it is within the Azone of reasonable
disagreement.@  Weatherred, 15 S.W.3d at 542.  








Prior
to a custodial interrogation, one must be advised, among other things, that he
has a right to consult with an attorney. 
Miranda v. Arizona, 384 U.S. 436, 467B68, 86 S. Ct. 1602, 1624B25 (1966).  Interrogation must cease immediately if the
suspect states that he wants an attorney. 
Id., 384 U.S. at 474, 86 S. Ct. at 1628; Dinkins v. State,
894 S.W.2d 330, 350 (Tex. Crim. App. 1995). 
A request for counsel must be unambiguous, meaning the suspect must Aarticulate his desire to have
counsel present sufficiently clearly that a reasonable police officer in the
circumstances would understand the statement to be a request for an attorney.@ Davis v. United States,
512 U.S. 452, 459, 114 S. Ct. 2350, 129 L.Ed.2d 362 (1994).  If the suspect=s statement is not an
unambiguous or unequivocal request for counsel, the officers have no obligation
to stop questioning him.  Id. at
461B62.  Whether a suspect has unequivocally requested
an attorney depends on whether he expressed a definite desire to speak to
someone, and that person be an attorney. 
Dinkins v. State, 894 S.W.2d 
at 352.  Once an accused invokes
his right to counsel, interrogation must cease until counsel has been made
available, unless the accused himself initiates further communication.  Minnick v. Mississippi, 498 U.S. 146,
151B52, 111 S. Ct. 486, 112 L.Ed.2d
489 (1990).   

After
reviewing the dialogue between appellant and Officer Nelson, we conclude
appellant=s question about a lawyer was
not an unambiguous invocation of his right to counsel, and was followed by
appellant=s continuation of the
interview.  Further, Officer Nelson was
not obligated to stop the interview. 
Anything less than a clear manifestation of the desire to consult an
attorney does not obligate the officer to stop the interrogation.  Id. 
Appellant=s sixth issue is overruled.

The
judgment of the trial court is affirmed.

 

_______________________________

John S. Anderson

Justice

 

 

 

Judgment
rendered and Opinion filed February 10, 2004.

Panel
consists of Justices Yates, Anderson, and Frost.

Publish C Tex. R. App. P. 47.3(b).











[1]  Here again,
appellant fails to specify whether the challenge is legal or factual
sufficiency.  As before, because appellant
requests acquittal, we will review these issues under a legal sufficiency
standard.  Collier, 999 S.W.2d at
786.





[2]  In abbreviated terms, the seven
theories were the following:  (1) for
reckless endangering, as a principal; (2) for the same, as a party/accomplice;
(3) for the same, as a party/co-conspirator to the burglary; (4) for knowing
the building contained the property of another, as a principal; (5) for the
same under a theory of transferred intent, as a principal; (6) for knowing the
building contained the property of another, as a party/accomplice; and (7) for
the same as a party/co-conspirator to the burglary.





[3]  As pointed out
by the State, the safe in this case was bolted to the floor and was a permanent
part of the building.  Gordon Miller
testified that the safe was anchored to the floor and if he sold the building,
the safe would be sold with it.  When
personal property is attached to realty and cannot be removed without
materially damaging the property, it loses its character as personal property
and becomes part of the realty.  Houston
Bldg. Service, Inc. v. American General Fire and Cas. Co., 799 S.W.2d 308,
311 (Tex. App.CHouston [1st Dist.] 1990, writ denied).  Thus, here the evidence shows the safe was
part of the building.