**Affirmed and Memorandum Opinion filed April 4, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00116-CR

### MIGUEL MARTINEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

### On Appeal from the 183rd District Court
### Harris County, Texas
### Trial Court Cause No. 1495682

## MEMORANDUM OPINION

Appellant Miguel Martinez was found guilty of murder in connection with the stabbing of Complainant Cesar Acosta-Gonzalez. In two issues, Appellant challenges the trial court's judgment and asserts (1) the trial court erred by excluding evidence of Complainant's violent character; and (2) the jury's finding against Appellant's self-defense claim is not supported by legally sufficient evidence. For the reasons below, we overrule Appellant's challenges and affirm the trial court's judgment.

BACKGROUND

Appellant stabbed Complainant during an altercation on January 17, 2016. Complainant died from his injuries, and Appellant was arrested and charged with murder. After a four-day trial, the jury found Appellant guilty and sentenced him to 35 years' confinement.

At Appellant's trial, the jury heard testimony from seven witnesses and Appellant. Most of the testimony was provided by two of the State's witnesses, Erica Alvarez and Edhelannie Salas. At the time of the incident, Alvarez was dating Appellant and Salas was close friends with Complainant.

Alvarez's and Salas's testimonies described a roughly similar sequence of events. On the day of the incident, Complainant drove Alvarez and Salas to Appellant's house in Pasadena, Texas. Complainant and Salas waited in Complainant's vehicle while Alvarez walked inside Appellant's house. Appellant and Alvarez began arguing about a hickey on Appellant's neck. Alvarez walked outside of the house followed by Appellant.

Seeing Appellant and Alvarez walk outside of Appellant's house, Complainant exited his vehicle and began arguing with Appellant. Complainant walked up the driveway towards Appellant and the men proceeded to fight. During the altercation, Appellant pulled out a pocketknife and stabbed Complainant four times. Complainant collapsed on the ground and Appellant left the scene in a car with several other people.

Alvarez's and Salas's testimonies differ with respect to certain details relevant to Appellant's self-defense claim:

- Alvarez testified that Complainant was the first aggressor and walked towards Appellant while "pick[ing] up his pants." According to Alvarez, "[e]very guy, before they fight, I always see the[m] pick up

2

their pants because they're always sagging." Alvarez was unsure who threw the first punch.

According to Salas, Appellant was the first aggressor and yelled at Complainant to exit his truck. Salas stated that the men "punch[ed] at the same time."

- Alvarez was unsure whether she saw anything in Complainant's hands during the altercation. Alvarez thought she saw Complainant reach in his pocket as if he was grabbing something.

  Salas testified that she did not see Complainant take any sort of weapon out of his pocket as he approached Appellant.

- Alvarez testified that, after Complainant collapsed on the ground, Salas went through his pockets and removed his wallet and phone. Alvarez stated that Salas put Complainant's phone, wallet, and jacket in his truck. Alvarez was unsure whether Salas removed additional items from Complainant's pockets.

  Salas denied going through Complainant's pockets or removing anything from the scene of the stabbing.

- Alvarez testified that she saw Complainant use cocaine on his way to Appellant's house.

  Salas testified that, although she had seen Complainant use cocaine on other occasions, she did not see him use cocaine the night of the incident.

The prosecutor for the State also questioned Alvarez regarding her statement to police officers shortly after the stabbing occurred. In her prior statement, Alvarez told officers that Appellant was the aggressor and that she saw him pull out a pocketknife as he walked towards Complainant. At trial, Alvarez said her prior statements were lies she told because she was mad at Appellant. Alvarez acknowledged that she only recently recalled seeing (1) Complainant reach in his pocket as he walked towards Appellant; and (2) Salas going through Complainant's pockets after he collapsed onto the ground.

3

Alvarez testified that she had spoken to Appellant "quite a few times" since the incident and had visited him in jail. Alvarez acknowledged that she "want[ed] to be in a relationship with" Appellant.

The State also called as a witness Nathan Cordon, who watched the incident unfold from a window in the house next door to Appellant's. Describing Appellant's and Complainant's actions preceding the altercation, Cordon testified that "[b]oth of them [were] kind of doing the same thing . . . cussing each other, calling each other names." Cordon stated that both men were shoving each other and that he never saw any weapons in the men's hands. Cordon recalled seeing Appellant swing and hit Complainant, after which Complainant fell to the ground breathing heavily.

Marissa Vallejo, the State's fourth witness, rode in the vehicle with Appellant when he left the scene of the stabbing. Vallejo stated that everyone in the vehicle was "shocked" by what had happened, and that Appellant was explaining his conduct and "pretty much just talking about what had happened to [Complainant]." Vallejo testified that Appellant wrapped a pocketknife in a t-shirt and threw the bundle into a sewer drain.

The State also called Pasadena Patrol Officer Charles Bonsal and Detective Michael Young. Officer Bonsal and Detective Young testified that no weapons were recovered from the scene of the stabbing. Officer Bonsal acknowledged that neither Complainant nor his truck was searched for weapons. Detective Young testified that a black pocketknife was recovered from a sewer drain near Pasadena. The knife was identified as the knife Appellant used to stab Complainant.

The State's final witness was Dr. Jennifer Ross, a medical examiner at the Harris County Institute of Forensic Sciences. Dr. Ross testified that Complainant

4

died of blood loss caused by multiple sharp-force injuries. Dr. Ross stated that there were knife wounds on both of Complainant's hands, injuries usually called "defensive wounds" because they often are seen "when someone is trying to defend themselves." Dr. Ross also testified that cocaine and metabolites of cocaine were found in Complainant's system, indicating Complainant used cocaine within 30 minutes to an hour before the incident occurred.

In his case-in-chief, Appellant called as a witness his mother's boyfriend, Alfonso Rosas. Rosas did not witness the stabbing but walked outside of Appellant's house shortly after it occurred. Rosas testified that, as he was trying to help Complainant after the stabbing, Salas was "digging through" Complainant's pockets. Complainant did not see if Salas removed anything from Complainant's pockets.

While cross-examining Rosas, the prosecutor for the State questioned him about his prior convictions for engaging in organized criminal activity and possession of a controlled substance. The prosecutor also asked Rosas why he did not provide a statement to police officers after the incident, to which Rosas replied, "I tried to say something. They ignored me. They went straight to other people."

Appellant was the final witness to testify. Discussing the sequence of events preceding the stabbing, Appellant said Alvarez was upset with him after seeing a hickey on his neck. Appellant testified that he was trying to "explain [him]self" to Alvarez as she walked outside of his house "[u]pset, mad, [and] crying." Appellant said he was trying to calm Alvarez when he heard a truck door slam. Appellant recalled seeing Complainant step out of his truck, throw his jacket on the ground, and walk up Appellant's driveway. Appellant testified that Complainant told him in "an angry voice" to get away from Alvarez. Complainant then "pick[ed] up his pants, and . . . pull[ed] out a knife." Stating that he was "scared,"

5

Appellant testified that he pulled out his own knife, closed his eyes, and started swinging. Appellant did not recall stabbing Complainant and stated that "[e]verything went black."

After the stabbing, Appellant stated that he went back inside his house to wash off Complainant's blood. Appellant said one of his friends dragged him outside of his house and threw him in a car. Appellant testified that he was "in shock" and "didn't know what to do." Appellant turned himself in two days later.

Appellant testified that he had not previously met Complainant before the day of the stabbing. On cross-examination, Appellant acknowledged that he did not get stabbed during the incident. Appellant also acknowledged his prior conviction for assaulting the mother of his child.

The charge instructed the jury with respect to murder and the law of self-defense. The jury found Appellant guilty of murder and sentenced him to 35 years' confinement. Appellant timely appealed.

## ANALYSIS

In two issues, Appellant asserts (1) the trial court erred by excluding evidence of Complainant's violent character; and (2) the jury's implied finding against Appellant's self-defense claim is not supported by legally sufficient evidence. For the reasons below, we overrule Appellant's issues.

### I. The Trial Court Did Not Err by Excluding Evidence of Complainant's Violent Character.

Outside of the jury's presence, Alvarez made the following statements with respect to Complainant's violent character: (1) Complainant was a gang member; (2) Alvarez previously had seen Complainant with a gun; and (3) Alvarez believed Complainant had something in his hands during the stabbing because she "knew

6

the type of person [Complainant] was." The trial court denied Appellant's request to admit the testimony as prior bad acts evidence relevant to show Complainant was the first aggressor. Appellant challenges the trial court's exclusion of this testimony and argues the evidence was admissible as (1) reputation or opinion testimony regarding Complainant's violent character, and (2) specific prior acts of violence by Complainant. *See Ex parte Miller*, 330 S.W.3d 610, 617-622 (Tex. Crim. App. 2009) (under certain circumstances, a victim's violent character may be shown through reputation or opinion testimony or evidence of specific acts).

A defendant in a homicide prosecution who raises the issue of self-defense generally may introduce evidence of the victim's violent character. Tex. R. Evid. 404(a)(2); *see also Ex parte Miller*, 330 S.W.3d at 618-20 and *Allen v. State*, 473 S.W.3d 426, 444-45 (Tex. App.—Houston [14th Dist.] 2015, pet. dism'd). Opinion or reputation testimony may be offered to prove the victim acted in conformity with his violent nature. Tex. R. Evid. 404(a)(2), *see also* 405(a); *Ex parte Miller*, 330 S.W.3d at 618; and *Allen*, 473 S.W.3d at 444. Specific violent acts may be admitted to show the reasonableness of the defendant's fear of danger or to show that the victim was the first aggressor. *Id.*; *see also Ex parte Miller*, 330 S.W.3d at 618-20; *Allen*, 473 S.W.3d at 444.

Even if we assume the trial court erred in excluding Alvarez's testimony, Appellant agrees that this exclusion is properly reviewed for non-constitutional error under Texas Rule of Appellate Procedure 44.2(b). *See Walters v. State*, 247 S.W.3d 204, 222 (Tex. Crim. App. 2007) (the exclusion of evidence that incrementally furthers a defendant's defensive theory is reviewed for non-constitutional error); *see also Vasquez v. State*, 501 S.W.3d 691, 700 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (same).

Non-constitutional error must be disregarded unless it affects a defendant's

7

substantial rights. Tex. R. App. P. 44.2(b); *see also Vasquez*, 501 S.W.3d at 700. Error affects a defendant's substantial rights when it has a substantial and injurious effect or influence on the jury's verdict. *Vasquez*, 501 S.W.3d at 700 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). "If the error has no or only a slight influence on the jury's verdict, the error is harmless." *Id*. at 700-01.

When we review for non-constitutional error, we consider everything in the record including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error, and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *see also Vasquez*, 501 S.W.3d at 701.

We conclude that any error stemming from the trial court's exclusion of Alvarez's testimony is harmless. Appellant asserts that exclusion of Alvarez's testimony affected his ability to present his theory of self-defense, but the record is replete with testimony regarding the events and circumstances surrounding the incident:

- Alvarez testified that Complainant was the first aggressor; she thought she saw Complainant reach in his pocket as he walked towards Appellant; Complainant used cocaine the night of the stabbing; and Salas went though Complainant's pockets after he was stabbed and removed his cell phone and wallet.

- In her statement to police officers the night of the stabbing, Alvarez said Appellant was the first aggressor.

- Salas testified that Appellant was the first aggressor; she did not see Complainant take anything out of his pockets as he walked towards Appellant; she did not see Complainant use cocaine the night of the stabbing; and she did not go through Complainant's pockets after he was stabbed.

- Cordon testified Appellant and Complainant were "kind of doing the

8

same thing . . . cussing each other, calling each other names;" Cordon stated that both men were shoving each other; Cordon never saw a weapon in the men's hands.

- Dr. Ross testified cocaine and metabolites of cocaine were found in Complainant's system, indicating Complainant used cocaine within 30 minutes to an hour before the incident occurred.

- Rosas testified Salas was "digging through" Complainant's pockets after he was stabbed.

This testimony presents conflicting versions of the altercation — some of it supporting Appellant's theory of self-defense and some of it suggesting Appellant was the first aggressor. This evidence, taken together, is sufficient to give the jury a full picture of the events that transpired the night Complainant was stabbed. Testimony regarding Complainant's membership in a gang or propensity to carry a gun bears, at best, only a tangential relationship to the actions and events at issue.

Moreover, although Appellant argues the excluded testimony supports his theory of self-defense, Alvarez's statements provide only slight support. Alvarez testified Complainant was a gang member, but the evidence did not suggest the altercation between Appellant and Complainant was in any way gang-related.

Testimony also shows Appellant was not aware of Complainant's alleged gang membership and alleged propensity to carry a gun. Appellant testified that he had not previously met Complainant before the stabbing. Alvarez stated she "never talked to [Appellant] about [Complainant] at all" and stated Appellant "didn't know nothing about [Complainant]."

Considering the entirety of the record and all evidence presented at trial, any error in excluding Alvarez's testimony did not have a substantial and injurious effect on the jury's verdict and was harmless. We overrule Appellant's first issue.

**II.** **Legally Sufficient Evidence Supports the Jury's Finding Against Appellant's Self-Defense Claim.**

In his second issue, Appellant asserts the jury's implied finding against his self-defense claim is not supported by legally sufficient evidence. Arguing that "[t]he evidence opposing self-defense came chiefly from the testimony of Salas," Appellant contends that Salas was a partisan witness who was not credible.

A defendant has the initial burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *see also Dearborn v. State*, 420 S.W.3d 366, 372 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Once this evidence is produced, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *see also Dearborn*, 420 S.W.3d at 373. This burden of persuasion does not require the State to produce evidence refuting the defendant's self-defense claim; rather, the State must prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *see also Dearborn*, 420 S.W.3d at 373. When the jury finds the defendant guilty, there is an implicit finding rejecting the defendant's self-defense claim. *Zuliani*, 97 S.W.3d at 594; *see also Dearborn*, 420 S.W.3d at 373.

When an appellant challenges the legal sufficiency of the evidence to support a finding against his self-defense claim, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the charged offense; and (2) against appellant on his self-defense claim. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Dearborn*, 420 S.W.3d at 373-74. We presume the jury resolved any conflicting inferences and issues of credibility in favor of the judgment and will not substitute

our judgment for that of the jury. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *see also Dearborn*, 420 S.W.3d at 374.

Here, Appellant has not challenged the sufficiency of the evidence to support the essential elements of the charged offense — murder. Therefore, we review only whether a rational trier of fact could have found beyond a reasonable doubt against Appellant on his self-defense claim. *See Harvey v. State*, No. 14-13-00774-CR, 2014 WL 4202519, at *2 (Tex. App.—Houston [14th Dist.] Aug. 26, 2014, no pet.) (mem. op.).

A person is justified in using deadly force against another person if he reasonably believes that deadly force is necessary to protect against the other person's use or attempted use of unlawful deadly force. Tex. Penal Code Ann. § 9.32(a) (Vernon 2011).

Here, the jury heard Appellant's testimony that he stabbed Complainant in self-defense after Complainant walked towards him and pulled out a knife. Alvarez's self-defense claim found some support in Alvarez's testimony that Complainant was the first aggressor and that she thought she saw Complainant reach in his pocket as he walked towards Appellant. Appellant's claim also found some support in Rosas's testimony that Salas was "digging through" Complainant's pockets after he was stabbed.

But the jury also heard evidence refuting Appellant's self-defense claim. Salas testified that (1) Appellant was the first aggressor and yelled at Complainant to get out of his truck; (2) she did not see Complainant take a weapon out of his pocket as he walked towards Appellant; and (3) she did not go through Complainant's pockets or remove anything from the scene of the stabbing. Cordon testified that, when the altercation began, Complainant and Appellant were "kind

11

of doing the same thing . . . cussing each other, calling each other names." Dr. Ross testified that Complainant had "defensive wounds" on both of his hands, which suggest he was not holding anything in his hands during the altercation.

The jury also was shown evidence indicating Appellant fled the scene after the stabbing and disposed of the knife in a sewer drain, further discounting Appellant's self-defense claim. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt."); *see also Castillo v. State*, 71 S.W.3d 812, 818 (Tex. App.—Amarillo 2002, pet. ref'd) (evidence showing the defendant threw weapon in a lake raised an inference of guilt).

Considering all of the evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found beyond a reasonable doubt against Appellant on his self-defense claim. Appellant asserts that Salas was "partisan" and "not credible," pointing out Salas saw Complainant every day before the incident and "lied when she testified that [Complainant] had not used cocaine that night." But this evidence does not conclusively disprove Salas's testimony regarding the events in question. The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we presume the jury resolved any conflicting inferences and issues of credibility in favor of the judgment. *See Isassi*, 330 S.W.3d at 638; *see also Dearborn*, 420 S.W.3d at 373-74.

Examining all the evidence in the record, the jury's implied finding against Appellant on his self-defense claim is supported by legally sufficient evidence. We overrule Appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/    Meagan Hassan
Justice

Panel consists of Justices Christopher, Jewell, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).