NUMBER 13-02-353-CR

 

                                 COURT
OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

 

 

MIGUEL
TREVINO A/K/A MIKE TREVINO,                                     Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

 

 

 

                             On
appeal from the 357th District Court

                                       of
Cameron County, Texas.

 

 

 

     CONCURRING
OPINION ON MOTION FOR REHEARING

 

                       Before
Justices Hinojosa, Yañez, and Castillo

                                       Opinion
by Justice Castillo                                                                








Respectfully, I agree to grant the motion for
rehearing.  In his motion, appellant
Miguel Trevino essentially asserts that, on original submission, the panel
majority handed down a "concurrence" which was the true majority
opinion (1) without reviewing the points of error raised, (2) without
addressing every issue raised and necessary to final disposition of the appeal,
see Tex. R. App. P. 47.1,
and (3) without stating the basic reasons for the decision, see Tex. R. App. P. 47.4.  Thus, he argues, he was denied an effective
review of the points of error raised on appeal and the opportunity for further
review.  I agree.  

A court of appeals must hand down a written opinion
that addresses every issue raised and necessary to final disposition of the
appeal.  See Tex. R. App. P. 47.1.  We must also address an appellee's reply
point including, without limitation, (1) that the appellant's point was not
preserved for review and (2) even an alternative argument in an appellee's
reply.  See Kombudo v. State, 171
S.W.3d 888, 889 (Tex. Crim. App. 2005) (citing Weatherford v. State, 828
S.W.2d 12 (Tex. Crim. App. 1992) and Light v. State, 15 S.W.3d 104, 108
(Tex. Crim. App. 2000)).  The appellate
court is not left free to pick and choose which facets of the reply argument it
will address.  See Light, 15
S.W.3d at 108.  The requirement that the
appellate court address every issue necessary to dispose of an appeal
comprehends addressing alternative arguments as well as arguments that are more
distinct in their topics.[1]  Id. 
Further, in an appeal seeking factual sufficiency review, we must
"show our work" by considering "the most important evidence that
appellant claims undermines the jury's verdict."  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).   








Because on original submission the panel majority
handed down a "concurrence" without reviewing the points of error
raised, without addressing every issue raised and necessary to the final
disposition of the appeal, and without stating the basic reasons for the
"concurrence," I join in the decision to grant the motion for
rehearing.  See Tex. R. App. P.
47.1, 47.4; Kombudo, 171 S.W.3d at 889; Light, 15 S.W.3d
108.  Applying the above cited,
well-settled principles to this appeal, as I did on original submission, I
write separately.[2]  For the reasons that follow, I concur with
the decision to affirm.  

I.  BACKGROUND

A.  The Appeal








As the majority correctly states, a jury convicted
Miguel Trevino of murder and aggravated assault.  The jury=s verdict at punishment was life imprisonment for
murder, 99 years for aggravated assault, and a $10,000 fine for each
count.  The trial court entered judgment
reflecting the jury=s verdict.  By
four points of error, Trevino complains of the denial of his motion to sever,
the denial of his motion to quash the indictment, the admission of evidence of
gang affiliation, and the sufficiency of the evidence.

B.  The
Indictment

The indictment alleges two substantive counts and an
enhancement count.  In count one, the
indictment contained two paragraphs, each accusing Trevino of murdering Michael
Meza under two of the three statutory forms of the offense.  The State alleged in count one that on or
about June 8, 2001, Trevino, with the intent to cause serious bodily injury to
Meza, committed an act clearly dangerous to human life by shooting Meza with a
firearm that caused his death, under section19.02(b)(2) of the Texas Penal
Code.[3]  Count one also alleged that Trevino
intentionally or knowingly caused the death of Meza by shooting him with a
firearm, in violation of section19.02(b)(1) of the Texas Penal Code.[4]

In count two, the State alleged that Trevino
intentionally, knowingly, or recklessly caused bodily injury to Everardo
Serrato by shooting him with a firearm.

C.  Relevant
Facts








On June 8, 2001, between 6:00 and 7:30 p.m.,
Everardo Serrato stopped at a traffic light while taking his friend, Mike Meza,
home.  Vehicles were both in front of and
behind his Grand Am.  Serrato had known
Meza for about three years and the two were "always together."  At the intersection, Serrato noticed a
late-model Jeep Cherokee traveling in the opposite direction.  Serrato recognized the driver as appellant
Miguel Trevino, whom he had known for more than fifteen years.  At one time, Trevino and Serrato were in the
same prison unit. 

As the Cherokee neared Serrato=s vehicle, Serrato thought Trevino was going to talk
to him as he was about to roll down his window. 
Trevino then shot at Serrato with a semiautomatic gun.  Serrato immediately reclined his seat all the
way back.  More than five shots were
fired, but Serrato could not say exactly how many.  Serrato sustained bullet wounds to his arms,
his chest, and his bottom lip.  Meza
sustained four entry wounds on the back of his left shoulder.  Meza died as a result of his injuries.  








Serrato maneuvered his vehicle out of traffic and
drove off, "running for his life." 
In his rearview mirror, he saw Trevino in pursuit, "holding half of
his body out" of the moving Cherokee, aiming, and continuing to shoot.  Two other passengers were in the Cherokee
with Trevino.  Serrato saw the woman in
the front seat hold the steering wheel as Trevino shot.  Trevino appeared to rush the woman to provide
him with another clip so that he could reload his gun.  Trevino continued to shoot for about 15 to 20
minutes, still in pursuit.  Serrato
testified that the shooting stopped when Trevino either dropped the gun or ran
out of bullets.  As soon as the shooting
stopped, Serrato turned on the first street he reached and pulled into a
convenience store parking lot.  

Before the shooting, Alfredo Gomez was stopped at
the same traffic light.  He saw a
Cherokee pull into the turning lane in front of his van.  After the light changed and Gomez proceeded,
he heard gunshots.  He saw a Grand Am
parked on the inside lane.  He saw the
Cherokee take off and park in a lot and then the Grand Am took off, making a
fast turn at the intersection.  The
driver=s side window of the Grand Am was shattered.  








Carol Cruz testified she was stopped at the same
intersection and saw the Grand Am make a complete stop.  She saw the Cherokee approach the traffic
light and stop.  She saw a man wearing a
white tank top and a girl next to him in the front seat and  another man in the back seat of the
vehicle.  Cruz saw the driver pull out a
gun, "literally sticking out of" the Cherokee, and shoot at the Grand
Am.  The man in the rear seat of the
Cherokee was encouraging the driver to shoot. 
Cruz heard six shots.  She saw the
Cherokee proceed through the intersection and make two U-turns, ending up
behind her.  She testified that the
Cherokee then passed her traveling between seventy and eighty miles per hour
and appeared to try to catch up to the Grand Am.       At
the convenience store where Serrato stopped after the shooting, Veronica
Tinsley, a correctional officer, saw a bloodied and distraught man exit the
driver side of his vehicle.  He told her
he was scared and asked for help because he had been shot.  She accompanied him inside the store and told
him to relax.  Serrato responded,
"They=re after me, they=re
after me."  She returned to Serrato=s vehicle and checked the passenger=s pulse for vital signs; she believed he was
dead.  Returning to Serrato, Tinsley
asked him about the shooter.  Serrato
said he knew who shot him but he didn=t give a name. 


Detective Carlos Vela testified that the Grand Am
had its rear left tire blown out.  A
photograph of the vehicle admitted in evidence shows four bullet holes through
the driver side window and another bullet hole through the metal part of the
driver side door.  Vela found no bullet
casings or weapons inside the Grand Am. 
Patrolman Danny Leal testified that the driver=s side window tint was peeled off toward the inside
indicating the bullets came from the outside into the car.  

Police officer Emilio Weaver responded to a call
regarding shots being fired involving two vehicles traveling to Harlingen from
San Benito.  Weaver testified that when
he reached the convenience store where Serrato parked, Serrato told him that
Trevino had shot him because Serrato was a member of a cadre.  








Serrato testified he had been to prison three times
for firearms and cocaine convictions. 
While there, he became a member of a cadre for his own protection.  According to Serrato, Trevino was a member of
the same cadre; but, Serrato was a veteran member and Trevino was a member of
the "new wave."  Serrato
explained that "the younger generation is getting on there just to make a
name for themselves . . . they don't like the idea of us telling them what to
do or how to run it, they decide to wipe us off the map."  "New wavers," he testified, is what
they are called, and they "don=t like old guys doing business."  If a new waver takes out an old member,
"you establish a rank position by doing something like that, that draws
your attention as far as your group." 
Meza, the deceased, was a prospect "in training" to become a
cadre member.  Serrato did not know the
identity of Meza's sponsor, but "knew he was one of me, that's why he hung
out with me."  Serrato denied giving
Meza advice about the cadre.  

At trial, the defense called police sergeant A. R.
Garcia, who testified that he did not find evidence that the tire of Serrato's
vehicle came off because of the shooting. 
He found no casings at the intersection where the shooting allegedly
occurred.  On cross-examination, he
testified that a hole under the rear license plate of the Grand Am appeared to
be a bullet hole.  He found nothing to
indicate that a bullet traveled from the inside to the outside of the
vehicle.  He testified that firing a gun
from inside a vehicle is an act that clearly intends to cause serious bodily
injury to a person.  

The defense re-called Serrato, who could not explain
why the passenger-side window of the Grand Am was rolled down in the pictures
admitted in evidence.  He testified he
might have rolled it down to get some air. 
He testified that his usual sitting position when driving was leaning
back.  He testified that when the
shooting began, he reclined the seat completely.








During both the culpability and punishment phases of
the trial, the State called an expert, Clemente Rodriguez, to testify about
gang activity.  Rodriguez is a security
threat group officer with the Institutional Division of the Texas Department of
Criminal Justice.  He testified that a
security threat group is comprised of offenders the department has determined
to be a threat to the physical safety of other offenders, the staff, and the
public because of their organized criminal activity.  One such group is the cadre, whose purpose is
to control other offenders and their activities in the prison system.  He testified that one way to identify its
members is by a tattoo.  Rodriguez reviewed
Trevino's records, which indicated he was a known member of the cadre.  Rodriguez testified that it was not unusual
to see violence among members of the same cadre and that one of the cadre's
rules is that any member who becomes a liability to the group while in prison
is to be killed or executed.  The cadre
has two factions that are at odds with each other.  The first faction includes the older members
who have been in the cadre longer than the second faction.  The second faction separated themselves because
they disagreed with the first group over a peace agreement with another cadre.  The factions of the cadre are at odds with
each other.  According to Rodriguez, the
second faction wanted to be the controlling faction of the cadre.  Rodriguez testified that any member who
wanted out of or went against the cadre was to be killed.  According to Rodriguez, the security threat
groups have codes, rules, regulations, and constitutions by which members must
abide.  One rule is membership for life,
"Blood in - blood out." 

III. 
SEVERANCE








In his first point of error, Trevino complains the
trial court erred in denying his motion to sever the two offenses.  He concedes that section 3.02 of the Penal
Code authorized the State to consolidate the two counts for conduct in the same
criminal episode.  Tex. Pen.
Code Ann. ' 3.02 (Vernon 2003). 
However, he asserts that under section 3.04 of the Penal Code, he had
the right to severance of the offenses. 
Tex. Pen. Code
Ann. ' 3.04 (Vernon 2003). 
The State responds that the murder and aggravated assault charges were
not joined under Penal Code section 3.02 and, thus, section 3.04(a) does not
apply.  The State argues that the
offenses constituted one indivisible and simultaneous criminal
transaction.  Alternatively, the State
argues that error, if any, was harmless.

A.  The
Defendant's Absolute Right to Severance








A defendant may be prosecuted in a single trial for
all offenses arising out of the same criminal episode.  Tex.
Pen. Code Ann. _ 3.02(a) (Vernon 2003).  The statute authorizes the consolidation and
joinder of prosecutions against a defendant for offenses arising out of the
same criminal episode.  Craig v. State,
594 S.W.2d 91, 94 (Tex. Crim. App. 1980). 
"Criminal episode" means the commission of two or more
offenses, regardless of whether the harm is directed toward or inflicted upon
more than one person or item of property.  Tex.
Pen. Code Ann. ' 3.01 (Vernon 2003). 
A single "criminal episode," as defined in Penal Code section
3.01, includes all offenses that form a part of one criminal
"transaction."  Cobb v.
State, 85 S.W.3d 258, 266 (Tex. Crim. App. 2002).[5]  The purpose of the joinder rule is to achieve
"convenience and efficiency, permitting one trial on the joined counts,
and treating the separate offenses as one for sentencing purposes."  Id. at 265 (citing Halliburton v. State,
578 S.W.2d 726, 729 (Tex. Crim. App. 1979)). 









When two offenses have been consolidated or joined
for trial under section 3.02, the defendant "shall have a right to a
severance of the offenses."  Tex. Pen.
Code Ann. _ 3.04(a) (Vernon 2003).[6]  If the request for severance is timely made,
the defendant's right to a severance is absolute and severance is
mandatory.  See Coleman v.
State, 788 S.W.2d 369, 371 (Tex. Crim. App. 1990) (en banc); Overton v.
State, 552 S.W.2d 849, 850 (Tex. 1977); see also Graham v. State, 19
S.W.3d 851, 852 n.2 (Tex. Crim. App. 2000). 
To be timely, the defendant's request for separate trials or objection
to their consolidation must occur before the jury is sworn.  See Thornton v. State, 957 S.W.2d 153, 156
(Tex. App.BFort Worth 1997), aff'd, 986 S.W.2d 615 (Tex.
Crim. App. 1999) (per curiam).  The
defendant's complaint is sufficient if it apprises the trial judge that he does
not desire to have the offenses joined in a common trial.  See Ford v. State, 782 S.W.2d 911, 912
(Tex. App.BHouston [14th Dist.] 1989, no pet.).  A defendant may so inform the court by
objection, request or motion to sever.  Guia v. State, 723 S.W.2d 763, 768 (Tex.
App.BDallas 1986, writ ref'd).  It is error to refuse such a motion, even if
made orally on the day of trial.  Murphy v. State, 663 S.W.2d 604, 609 (Tex.
App.BHouston [1st Dist.] 1983, no writ).

Trevino filed a motion to sever under section
3.04(a), requesting that the two alleged offenses be severed and tried
separately.  As grounds, Trevino asserted
that the murder and aggravated assault charges involved two different victims
and as such were two different crimes. 
The trial court stated in open court that it considered the motion.  The written order denying the motion is in
the record.  Because the right to sever
is absolute, the trial court erred in denying Trevino's motion. 

B.  Harm
Analysis








Before we may reverse the convictions, we must first
determine whether Trevino was harmed by the trial court's error.  Tex.
R. App. P. 44.2.  Severance error
is subject to a harm analysis.  See
Llamas v. State, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000); see also
Motilla v. State, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002).  A criminal conviction should not be
overturned for non‑constitutional error if the appellate court, after
examining the record as whole, has fair assurance that the error did not
influence the jury, or had but a slight effect. 
See Tex. R. App. P. 44.2(b); Johnson v. State,
967 S.W.2d 410, 417 (Tex. 1998); see generally King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App.1997).  If the
error had no influence or only a slight influence on the verdict, it is
harmless.  Johnson, 967 S.W.2d at
417.  To judge the likelihood that the
jury's decision was adversely affected by non-constitutional error that does
not affect substantial rights, appellate courts must consider everything in the
record including:  (1) all the testimony
or physical evidence admitted for the jury's consideration; (2) the nature of
the evidence supporting the verdict; (3) the character of the alleged error and
how it might be considered in connection with other evidence in the case; (4)
the jury instructions; (5) the State's theory and any defensive theories; (6)
closing arguments; (7) voir dire, if applicable; and (8) overwhelming evidence
of guilt.  Motilla, 78 S.W.3d at
357-58; Llamas, 12 S.W.3d at 471. 
Though not dispositive, the evidence of the defendant's guilt is a
relevant factor in conducting a harm analysis under rule 44.2(b).  Motilla, 78 S.W.3d at 360.  

Thus, Trevino is not entitled to reversal unless the
error affected a substantial right.  See
id; Tex. R. App. P. 44.2(b).  Rule 44.2(b) requires us to examine error in
relation to the entire proceeding and determine whether it had a substantial
and injurious effect or influence in determining the jury's verdict.  Rodriguez v. State, 90 S.W.3d 340, 357-58
(Tex. App.BEl Paso 2001, pet. ref'd.).  If the reviewing court determines that the
error did not have an influence on the jury, or "had but very slight
effect," the verdict must stand.  Id.
at 358.  Stated another way, the error
must have affected the outcome of the lower court proceedings.  Id. 
If the record fails to show that the error had such an impact, it cannot
be said to affect a substantial right, and we are mandated to disregard the
error.  Id.  If we have "grave doubts" about
whether an error did not affect the outcome, we must treat the error as if it
did.  Id. 








Various potentialities for harm other than
consecutive sentencing exist when a defendant is denied the right to severance
of offenses.  Llamas, 12 S.W.3d at
471.  The rule allowing severance rests
upon two legitimate concerns:  (1)
"that the jury may convict a bad man who deserves to be punishedBnot because he is guilty of the crime charged but because
of his prior or subsequent misdeeds; and (2) that the jury will infer that
because the accused committed other crimes, he probably committed the crime
charged."  Id. at
471-72.  Some kinds of error will never
be harmless under the rule 44.2(b) test and other kinds of error will rarely be
harmless.  See id.; see also
Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (en banc). 

Here, Trevino does not address harmful error.  The State asserts that Trevino=s substantial rights were not affected and the error
had no injurious effect on the jury's verdict. 
The State argues that: (1) the two crimes occurred simultaneously and
instantaneously, and they shared a common mens rea; (2) the evidence of
each of the crimes would have been admissible in a separate trial of the other
offenses as "same transaction contextual evidence," under Rogers
v. State, 853 S.W.2d 29, 32-34 (Tex. Crim. App. 1993) (en banc), and Foster
v. State, 976 S.W.2d 732, 733-34 (Tex. App.BTyler
1998, pet. ref=d.) (per curiam); (3) because the jury would have
heard the same evidence whether the offenses were tried in separate trials or
in one trial, the joinder in a single trial could not have affected Trevino=s substantial rights; and (4) Trevino benefitted
from one charging instrument in that he did not receive consecutive sentences
and was required to be tried only once.  









The record contains sufficient data for a harm
analysis.  See Llamas, 12 S.W.3d
at 471.  During voir dire, the State
mentioned the two offenses in connection with its burden to prove both
offenses.  Defense counsel addressed the
two offenses in connection with the range of punishment for each.  During opening statements, the State related
its theory that Trevino intended to kill a member of the same cadre and, as a
result, injured his targeted victim but killed a passenger in the vehicle involved.  During the culpability phase of the trial,
the State called eyewitnesses who testified that Trevino fired shots into a
vehicle stopped at a traffic light, pursued the vehicle, and continued shooting
while in pursuit.  The State introduced
photographs of the victims of the shooting and their injuries.  The State's witnesses relayed how one victim
survived and the other died as the result of the bullet wounds.  The State introduced photographs showing
bullet holes through the driver's side window. 
During the penalty phase of the trial, the trial court read the charge
to the jury containing the range of punishment for each offense.  








In his argument to the jury, defense counsel told
the jury that Meza was killed accidentally. 
Arguing mitigating circumstances, defense counsel stated that, although
Meza was a family man, he was involved with drugs and the cadre, and that
Serrato was similarly involved in the cadre. 
The prosecutor argued that Trevino committed "cold-blooded acts of
violence.  You [the jury] found him
guilty of aggravated assault on Everardo Serrato; you found him guilty of
murdering Michael Meza, and now you've heard evidence that he was apprehended
because he was beating a woman unconscious with this bottle."  The prosecutor mentioned both offenses twice
more in asking the jury to assess punishment at life for the murder
offense.  

Same transaction contextual evidence, namely
evidence of other offenses connected with the primary offense, is admissible
not because it has evidentiary value but because when narrating the events of
the charged offense, it is impractical to avoid describing these other
offenses.  See Tex. R. Evid. 404(b); Rogers, 853 S.W.2d at 33, (citing Mayes
v. State, 816 S.W.2d 79, 84-87 (Tex. Crim. App. 1991)) ("'Same
transaction contextual evidence' is deemed admissible where several crimes are
intertwined or blended with one another.").  I agree with the State that the jury would
have heard the same evidence whether the offenses were tried separately in different
trials or together in one.  The joinder
of the offenses in a single trial could not have affected Trevino's substantial
rights.  

C. 
Disposition

Examination of the Llamas and Motilla
factors as applied to the record leads me to conclude that the error did not
affect the outcome of the lower court proceedings, and Trevino's substantial
rights were not affected.  Thus, I
conclude that Trevino was not harmed by the trial court's denial of his motion
to sever.  See Tex. R. App. P. 44.2(b); Motilla, 78 S.W.3d at 355; Llamas,
12 S.W.3d at 471‑72; Johnson, 967 S.W.2d 410 at 417; King,
953 S.W.2d at 271.  

Accordingly, I concur with the majority's decision
to overrule Trevino's first point of error.








IV.  MOTION TO
QUASH THE INDICTMENT

In his second point of error, Trevino asserts the
trial court erred in denying his motion to quash count one of the indictment[7]
alleging murder.  Trevino argues that the
State failed to track the language of section 19.02(b)(2)[8]
by not including the word "and." 
Including the word "and" would require the State to show that
Trevino had intent to cause serious bodily injury and committed an act clearly
dangerous to human life that caused a death as required by section
19.02(b)(2).  He states that without the
complained-of conjunctive in the indictment, the State did not allege all the
elements of the offense.  The State
responds that the indictment fully and accurately conveys the meaning of the
statute and, more importantly, that the jury charge contained the word
"and." 








Trevino complains that the jury could have been
misled to convict him on a lesser standard of intent than required by
statute.  The State argues that the
record does not demonstrate any confusion on the jury's part.  Trevino also complains he did not have proper
notice of how the State would attempt to proceed on the allegations and thus
was forced to defend a case in which a lesser standard than the required
"intentionally and knowingly" intent element was applied.  Further, he asserts, the failure to give
proper notice was prejudicial.  The State
responds that the complaint is "a stylistic thing, a comma can also stand
for a conjunction." 

A.  Standard
of Review

The sufficiency of an indictment is a question of
law.  State v. Moff, 154 S.W.3d
599, 601 (Tex. Crim. App. 2004).  We
review a trial court's ruling on a motion to quash de novo. Id.  Prior to the Court of Criminal Appeals'
decision in Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997) (en
banc), abuse of discretion was the standard employed when reviewing a trial
court's decision to quash an indictment. 
Id.  The amount of
deference appellate courts afford a trial court's rulings depends upon which
"judicial actor" is better positioned to decide the issue.  Id. (citing Guzman, 955 S.W.2d
at 89).  When the resolution of a
question of law does not turn on an evaluation of the credibility and demeanor
of a witness, then the trial court is not in a better position to make the
determination, so appellate courts should conduct a de novo review of the
issue.  Moff, 154 S.W.3d at
601.  The trial court's decision in this
case was based only on the indictment, the motion to quash, and the argument of
counsel.  Thus, the trial court was in no
better position than this Court to decide this issue, so I will conduct a de
novo review of the trial court's ruling. 
Id. 








B. 
Sufficiency of an Indictment








As a general rule, a charging instrument that tracks
the language of a criminal statute possesses sufficient specificity to provide
a defendant with notice of a charged offense.  State v. Edmond, 933 S.W.2d 120, 128 (Tex.
Crim. App. 1996) (en banc).  The State
need not allege facts that are merely evidentiary in nature.  Bynum v. State, 767 S.W.2d 769, 778 (Tex.
Crim. App. 1989) (en banc).  An accused
is entitled to notice of the acts or omissions the State alleges the accused
committed.  Daniels v. State, 754
S.W.2d 214, 217 (Tex. Crim. App. 1988) (en banc).  A motion to quash should be granted only when
the language concerning the defendant's conduct is so vague or indefinite as to
deny him effective notice of the acts he allegedly committed.  DeVaughn v. State, 749 S.W.2d 62, 67
(Tex. Crim. App.1988) (en banc).  To
survive a timely motion to quash, the indictment, on its face, must contain
allegations of the facts necessary to show that the offense was committed, to
bar subsequent prosecution for the same offense, and to give the defendant
notice of the precise offense with which he is charged.  Id; Tex.
Code Crim. Proc. Ann. art. 21.03 (Vernon 1989).  Upon review, we first determine if the notice
given is sufficient.  Id.  If it is, our inquiry is ended; if not, the
record must be examined to determine the impact of the deficiency on
appellant's defense.  Id; see
also Hillin v. State, 808 S.W.2d 486, 488 (Tex. Crim. App.1991) (en
banc).  When construing an indictment, we
read the indictment as a whole, applying practical, rather than technical
considerations.  Oliver v. State,
692 S.W.2d 712, 714 (Tex. Crim. App. 1985) (en banc); Dennis v. State,
647 S.W.2d 275, 279 (Tex. Crim. App. 1983) (en banc); Soto v. State, 623
S.W.2d 938, 939 (Tex. Crim. App. 1981); Church v. State, 552 S.W.2d 138,
140 (Tex. Crim. App. 1977). 

Subject to rare exceptions, an indictment that
tracks the words of a statute is legally sufficient.  Lewis v. State, 659 S.W.2d 429, 431
(Tex. Crim. App.1983) (en banc). 
However, when a statute provides more than one manner of committing a
crime, the State must allege the particular statutory means of committing the
offense.  See Ferguson v. State,
622 S.W.2d 846, 851 (Tex. Crim. App. 1981) (en banc) (finding defendant may not
be left to guess whether State would seek to prove one or all types of defined
conduct).  An indictment shall be deemed
sufficient if it charges the commission of the offense in ordinary and concise
language in such a manner as to enable a person of common understanding to know
what is meant, and with that degree of certainty that will give the defendant
notice of the particular offense with which he is charged, and enable the
court, on conviction, to pronounce the proper judgment.  Tex.
Code Crim. Proc. Ann. art. 21.11 (Vernon 1989).  An indictment shall not be held insufficient,
nor shall the trial, judgment or other proceedings thereon be affected, by
reason of any defect of form which does not prejudice the substantial rights of
the defendant.  Tex. Code Crim. Proc.
Ann. art. 21.19 (Vernon 1989). 

C. 
Disposition








In the motion to quash, Trevino complained that the
State changed the elements of section19.02(b)(2) by: (1) adding Ato an individual, namely Michael Meza;" and,
(2) omitting the word Aand.@  The
indictment alleged:

. . . MIGUEL TREVINO A/K/A MIKE TREVINO [defendant],
on or about the 8TH day of JUNE, 2001, and anterior to the presentment of this
indictment, in the County of Cameron and State of Texas, did then and there,
with intent to cause serious bodily injury to an individual, namely, MICHAEL
MEZA, commit an act clearly dangerous to human life, to-wit:  by shooting MICHAEL MEZA with a firearm, that
caused the death of said MICHAEL MEZA,

AND THE GRAND JURORS
AFORESAID, upon their Oaths in said Court, do further present that the
defendant on or about the above mentioned date and anterior to the presentment
of this Indictment, in the County of Cameron and State of Texas, did then and
there intentionally or knowingly cause the death of an individual, namely, MICHAEL
MEZA, by shooting MICHAEL MEZA with a firearm. 


At the pretrial hearing, Trevino=s counsel argued that the omission of
"and" could lead the jury to conclude the State must prove either the
element of "intent to cause serious bodily injury" or the element of
"commits an act clearly dangerous to human life," but not both.  The trial court held that everything in the
clause was required and the addition of the word "and" was
"basically for clarification and is not a substantive change."  The trial court denied the motion to quash.  








The notice provided by the indictment in question
must be examined from the perspective of the accused in light of his
constitutional presumption of innocence. 
DeVaughn, 749 S.W.2d at 68. 
Where a particular intent is a material fact in the description of the
offense, it must be stated in the indictment. 
Tex. Code Crim.
Proc. Ann. art. 21.05 (Vernon 1989). 
Here, Trevino had notice that the State was seeking a murder conviction
in count one under either section19.02(b)(1) or (2).  See Tex.
Pen. Code Ann. ' 19.02(b)(1), (2) (Vernon 2003).  The indictment required the State to prove
Trevino "intentionally and knowingly" caused the death of Meza under
section 19.02(b)(1).  See Tex. Pen.
Code Ann. ' 19.02(b)(1) (Vernon 2003).  The indictment required the State to prove
Trevino had the intent "to cause seriously bodily injury" to
Meza.  Because the indictment adequately
informed Trevino of the complained-of intent requirement, I conclude the
indictment was sufficient.    

Trevino complained to the trial court and asserts on
appeal that without "and" in the indictment, the jury could convict
him for murder under the standard of a reckless act codified as
manslaughter.  The indictment alleges
that Trevino "did then and there:" 
(1) with intent to cause serious bodily injury; (2) to Meza; (3) commit
an act clearly dangerous to human life; (4) by shooting Meza with a firearm;
(5) that caused Meza=s death.  The
indictment tracks the language of the statute.  Tex.
Pen. Code Ann. _ 19.02(b)(2) (Vernon 2003).  The indictment is sufficient.  I conclude that the absence of
"and" is not fatal.  I conclude
that count one of the indictment gave Trevino sufficient notice that he was
charged with the murder of Meza. 
Further, the trial court's charge to the jury included the required
culpable mental state:

Now, if you find from the evidence beyond a
reasonable doubt that on or about the 8th day of June, 2001 in Cameron County,
Texas, the defendant, Miguel Trevino, aka Mike Trevino, did intentionally or
knowingly cause the death of Michael Meza, by shooting him with a firearm or
did then and there intend to cause serious bodily injury to the said Michael
Meza and with said intent to cause such serious bodily injury did commit an act
clearly dangerous to human life, to wit, by shooting the said Michael Meza,
with a firearm, and did, in either event, thereby cause the death of said
Michael Meza, as alleged in the indictment, then you will find the defendant
guilty of murder. 








The court's charge required the jury to find that
Trevino intended to cause serious bodily injury to Meza and with such intent
committed an act clearly dangerous to human life under penal code section 19.02(a)(2).  No other culpable mental state was
required.  See Tex. Pen.
Code Ann. ' 19.02(a)(2) (Vernon 2003); Ortiz v. State,
651 S.W.2d 764, 767 (Tex. Crim. App. 1983) (en banc).  

Accordingly, I concur with the majority's decision
to overrule Trevino's second point of error.

V.  EVIDENCE
OF GANG AFFILIATION

In his third point of error, Trevino asserts the
trial court erred in admitting evidence of gang affiliation during the guilt-innocence
phase of the trial, and that he was thereby harmed.  The State counters that evidence of Trevino's
membership in a known gang was admissible on two bases: (1) to demonstrate
motive for the murder and aggravated assault; and (2) it was the res gestae of
the murder itself.








Trevino complains that the trial court admitted
evidence of gang affiliation through Serrato and the State's expert witness,
Clemente Rodriguez.  The State's theory
was that Trevino opened fire into Serrato's vehicle because Trevino and Serrato
were members of two competing sects of the same gang.  Meza was Serrato's friend and a "victim
who happened to be in the wrong place at the wrong time."  Trevino counters that because Serrato
testified that he knew of no reason why Trevino attacked him, evidence of gang
affiliation was improper character evidence. 
Trevino adds that the expert's testimony was improper character evidence
and, despite the lack of evidence of gang membership as a motive, the State
proceeded to introduce the expert's testimony on prison gangs.  

A.  Standard
of Review

We review a trial court's admission or exclusion of
evidence under an abuse-of-discretion standard. 
Montgomery v. State, 810 S.W.2d 372, 379‑80 (Tex. Crim.
App. 1990) (en banc) (op. on reh'g). 
The abuse-of-discretion standard applies to our review of a trial court=s admission or exclusion of hearsay evidence.  See Cunningham v. State,
877 S.W.2d 310, 313 (Tex. Crim. App. 1994) (excluding admission against
interest).  An abuse of discretion occurs
when the trial court acts arbitrarily or unreasonably, without reference to
guiding rules or principles.  Montgomery,
810 S.W.2d at 380.  In other
words, an abuse of discretion occurs only when the trial court's decision is so
wrong as to lie outside that zone within which reasonable persons might
disagree.  Id.  A trial court has a "limited right to be
wrong."  Our inquiry on appeal is
whether the result was reached in an arbitrary or capricious manner.  Id. 
Therefore, we uphold a trial court's evidentiary ruling if it is
reasonably supported by the record and is correct under any theory of law
applicable to the case.  Jones v.
State, 833 S.W.2d 118, 125 n.15 (Tex. Crim. App. 2002) (en
banc); State v. Ross, 32 S.W.3d 853, 855‑56 (Tex.
Crim. App. 2000) (en banc).  We do
not reverse a trial court's evidentiary ruling on a theory of admissibility or
inadmissibility not raised at trial.  Martinez
v. State, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002). 

B.  The Law Applicable
to Evidentiary Rulings








To be admissible, evidence must be relevant.  Tex.
R. Evid. 402.  Relevant evidence is evidence having any
tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.  Tex. R. Evid. 401.  Although
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues,
misleading the jury, by considerations of undue delay, or needless presentation
of cumulative evidence.  Tex. R. Evid. 403; Mozon v. State, 991 S.W.2d 841, 846‑47
(Tex. Crim. App. 1999).  In other words,
rule 403 favors the admission of relevant evidence and carries the presumption
that relevant evidence will be more probative than prejudicial.  Phelps v. State,
5 S.W.3d 788, 795 (Tex. App.BSan Antonio 1999, pet. ref=d).  In reviewing
the trial court=s balancing of probative value with prejudice, we
reverse the trial court=s judgment "rarely and only after a clear abuse
of discretion."  Id. at
795 (citing Montgomery, 810 S.W.2d at 379). 








Rule 404 generally prohibits the use of character
evidence.  Montgomery, 810 S.W.2d
at 376-77.  Nonetheless, evidence of
"other crimes, wrongs, or acts" may be admissible if it has relevance
apart from its tendency "to prove the character of a person in order to
show that he acted in conformity therewith."  Tex.
R. Evid. 404(b); see
Montgomery, 810 S.W.2d at 377. 
To preserve error over admission of extraneous-offense evidence, an
accused first must object under rule 404(b) of the rules of evidence.  Tex.
R. Evid. 404(b); Saldivar v.
State, 980 S.W.2d 475, 491 (Tex. App.BHouston [14th Dist.] 1998, pet. ref'd).  The State then must show that the proffered
evidence is relevant apart from its tendency to show that the accused is a
criminal, such as "proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident."  Tex.
R. Evid. 404(b); Saldivar,
980 S.W.2d at 491.  At the
accused's request, the trial court should then require the State to articulate
the limited purpose for which the evidence is offered.  Saldivar,
980 S.W.2d at 491.  In
considering the relevancy of the evidence, the trial court must determine, at
the proffer of the evidence, that a jury reasonably could find beyond a
reasonable doubt that the accused committed the extraneous offense.  Saldivar,
980 S.W.2d at 491.  If the
trial court determines that the extraneous-conduct evidence is relevant, the
accused then must object under rule 403 and obtain a ruling as to whether the
probative value of the evidence is substantially outweighed by its prejudicial
effect.  See  Tex.
R. Evid. 403.  Accordingly, an objection under rule 404(b)
alone does not preserve error as to the admission of evidence of an
extraneous offense.  Objection under
rule 403 also is required. 
Id.  Further,
when extraneous conduct is admitted in the culpability phase of a trial
without a limiting instruction at the time of admission, it may
result in the jury drawing an impermissible inference about the
accused's guilt based on character conformity. 
See Hammock v. State, 46 S.W.3d 889, 894 (Tex. Crim. App.
2001).  The danger then becomes that a
later instruction in the jury charge cannot erase the improper inference.  Id. 
Therefore, in the absence of a timely motion for a limiting instruction
at the time the evidence is offered, the evidence is admitted for all
purposes.  See id.  








C. 
Evidentiary Objection

Trevino's rule 404(b) objection to evidence of gang
affiliation sufficiently apprised the trial court of the nature of his
complaint.  See Tex. R. 
App. P. 33.1(a)(1)(A). 
However, Trevino did not object under rule 403 and obtain a ruling as to
whether the probative value of the evidence was substantially outweighed by its
prejudicial effect.  See Tex. R. Evid. 403.  Nor did he
ask for a limiting instruction during the culpability phase of the trial.  See Tex.
R. Evid. 105(a); see also
Hammock, 46 S.W.3d at 894.  I agree
with the majority that, at trial, Trevino did not preserve error on any
complaint over admission of evidence of gang affiliation. 








Even assuming that Trevino did not forfeit his
complaint of error, I conclude that the trial court did not abuse its
discretion in admitting evidence of gang affiliation.  As previously stated, under rule 404(b), evidence
of other crimes, wrongs, or acts is not admissible to prove a person's
character and/or to show that the person acted in conformity with that
character.  See Tex. R. Evid. 404(b).  However,
such evidence may be admitted if it is relevant to motive, identity, intent,
opportunity, preparation, plan or absence of mistake.  Id. 
As the Texas Court of Criminal Appeals has explained, "It has long
been the rule in this State that the jury is entitled to know all relevant
surrounding facts and circumstances of the charged offense; an offense is not
tried in a vacuum."  Moreno v.
State, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986) (en banc) (citing Archer
v. State, 607 S.W.2d 539, 542 (Tex. Crim. App. 1980)).  Thus, gang membership evidence is admissible
under Texas Rule of Evidence 404(b) (and rule 402) if it is relevant to show a
noncharacter purpose that in turn tends to show commission of the crime.  Ortiz v. State, 93 S.W.3d 79, 94 (Tex.
Crim. App. 2002) (en banc); Tibbs v. State, 125 S.W.3d 84, 89 (Tex. App.BHouston 2003, pet. ref'd); see Vasquez v.
State, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002); Martinez v. State,
98 S.W.3d 189, 193 (Tex. Crim. App. 2003); Beasley v. State, 902 S.W.2d
452, 456-57 (Tex. Crim. App. 1995) (en banc); Bradford v. State, 178
S.W.3d 875, 879 (Tex. App.BFort Worth 2005, no pet.); Chimney v. State,
6 S.W.3d 681, 699 (Tex. App.BWaco 1999, pet. ref'd).  Further, while evidence may be admissible
under rule 404, the trial court may exercise its discretion to exclude the
evidence under rule 403 if it determines that the probative value is
substantially outweighed by the danger of unfair prejudice.  Tex.
R. Evid. 403; Mozon, 991 S.W.2d at 846.  

D. 
Disposition








The State's theory was that Trevino intentionally
opened fire at Serrato's vehicle because Serrato was a member of a rival sect
in the same gang.  Thus, the gang
affiliation evidence was relevant evidence of motive to show an intent to kill,
and is permissible under rule 404(b).  See Vasquez, 67 S.W.3d at 239 ("As
for Rules 401, 402, and 404, we hold that gang‑affiliation is relevant to
show a motive for a gang‑related crime."); Medina v. State, 7
S.W.3d 633, 644 (Tex. Crim. App. 1999) (stating that evidence of gang
affiliation "was most relevant as to appellant's motive and intent on the
night of the offense"); Williams v. State, 974 S.W.2d 324, 331
(Tex. App.BSan Antonio 1998, pet. ref'd) (holding evidence of
gang affiliation admissible under rule 404(b) to show motive).  Because Trevino's affiliation with the rival
"new wavers" was relevant to show the motive for the shooting, rather
than mere conformity with character, the trial court did not abuse its discretion
by allowing the testimony.  Montgomery,
810 S.W.2d at 379-80.

E.  Harm
Analysis








Even assuming that the trial court abused its
discretion in admitting evidence of gang affiliation during the guilt-innocence
phase of the trial, Trevino is not entitled to reversal unless he shows the
error was: (1) of constitutional magnitude; or (2) affected a substantial
right.  See Tex. R. App. P. 44.2(a), (b).  A
violation of rules of evidence that results in erroneous admission of evidence
is non-constitutional error.  Couchman
v. State, 3 S.W.3d 155, 160 (Tex. App.BFort Worth 1999, pet. ref=d).  A harm
analysis under rule 44.2(a) imposes a more stringent standard than
rule 44.2(b).  Guidry v. State,
9 S.W.3d 133, 151 n.14. (Tex. Crim. App. 1999).  Under rule 44.2(a), if the appellate record
in a criminal case reveals constitutional error subject to harmless-error
review, we must reverse a judgment of conviction or punishment unless we
determine beyond a reasonable doubt the error did not contribute to the
conviction or punishment.  Tex. R. App. P. 44.2(a); Wesbrook v. State, 29 S.W.3d 103, 119
(Tex. Crim. App. 2000) (en banc); Aguirre-Mata v. State, 992 S.W.2d
495, 498 (Tex. Crim. App. 1999).  In
making a harmless-error determination under rule 44.2(a), we do not focus on
the weight of other evidence of guilt. 
Rather, we determine whether the error might have prejudiced a juror=s decision-making process.  Montgomery v. State, 821 S.W.2d 314,
317 (Tex. App.BDallas 1991, pet. ref'd) (citing Harris v. State,
790 S.W.2d 568, 587 (Tex. Crim. App. 1989) (en banc)).  

In performing a harmless-error analysis under rule
44.2(a), we isolate the effect of the error and determine how much weight a
juror would probably place on the error. 
Harris, 790 S.W.2d at 587. 
If the error was of such a magnitude that in reasonable probability it
disrupted the jury's orderly evaluation of all the evidence, no matter how
overwhelming other evidence of guilt might have been, then the conviction must
be reversed.  Id. at 588.  Unless the overwhelming evidence dissipates
the error=s effect on the jury=s
function in determining the facts, so that it did not contribute to the
verdict, the error is harmful.  Id.
at 587.  We ask if a reasonable
probability exists that the evidence, either alone or in context, moved the
jury from a state of nonpersuasion to one of persuasion beyond a reasonable
doubt.  Wesbrook, 29 S.W.3d at
119; Cardenas v. State, 971 S.W.2d 645, 651 (Tex. App.BDallas 1998, pet. ref=d).  If so, the error is harmful.  Wesbrook, 29 S.W.3d at 119.  








Whether the evidence is sufficient to convict
without the inadmissible evidence is not the sole determinant in a rule 44.2(a)
harm analysis.  See Cardenas, 971
S.W.2d at 651.  Rather, we assess whether
a reasonable probability exists that the erroneously admitted evidence
contributed to the jury=s verdict.  Id.  Thus, we must calculate as closely as
possible the probable impact of the error on the jury in the context of the
other evidence introduced at trial.  Harris,
790 S.W.2d at 587.  In making this
determination, Harris directs us to examine six factors:  (1) the source of the error; (2) the nature
of the error; (3) whether and to what extent the State emphasized the error;
(4) any collateral implications of the error; (5) the weight a juror would
probably place on the error; and (6) whether declaring the error harmless would
encourage the State to repeat it with impunity. 
Id.; Mosley v. State, 960 S.W.2d 200, 204-05 (Tex.
App.BCorpus Christi 1997, no pet.).  We are "obligated to examine the entire
record in a neutral, impartial and even-handed manner and not 'in the light
most favorable to the prosecution.'"  Harris, 790 S.W.2d at 586.

In this case, the source and nature of the error, if
any, was the trial court=s admission of evidence of Trevino=s gang affiliation. 
The State did emphasize gang affiliation.  However, while other evidence of guilt is not
a sole determinant, any collateral implications of admitting the evidence and
the amount of weight the jury placed on the evidence were minimal because the
jury heard other substantial evidence related to Trevino=s conduct. 
The jury also heard Serrato testify that he was a member of the same
gang and that Trevino was part of the group (the "new wavers") who
wanted to rid the gang of the older members. 
According to Serrato, Meza was a prospect.  I cannot conclude that it is likely that the
State will repeat this type of error, if any, with impunity.  See id. 








The most significant concern in a rule 44.2(a) harm
analysis is the effect of any erroneously admitted evidence on the integrity of
the trial process.  Id.  While not determinative of the harm question,
the presence of overwhelming evidence supporting a jury=s finding of guilt is a factor in the evaluation of
harmless error under rule 44.2(a).  Id.  The unchallenged evidence in this case
permitted the jury to find all of the elements of the charged offenses.  This evidence was not contradicted.  Given this evidence, the jury was clearly not
equally balanced on the issue of guilt or innocence.  Indeed, nothing suggests the jury would have
returned a different verdict "but for" admission of Trevino=s gang affiliation.  Tibbs, 125 S.W.3d at 96.  I conclude Trevino was not harmed by the
admission of gang affiliation during the guilt-innocence phase of the trial. 

 Accordingly,
I concur with the majority's decision to overrule Trevino=s third point of error.

VI. 
SUFFICIENCY OF THE EVIDENCEBMURDER








I construe Trevino's brief liberally and conclude he
raises both legal and factual sufficiency challenges.  See Tex.
R. App. P. 38.9.  In his fourth
point of error, Trevino essentially challenges the sufficiency of the evidence
to convict him of (1) the murder of Meza, and (2) the aggravated assault of
Serrato.  In particular, Trevino asserts
that there is no evidence that he knowingly and intentionally committed murder
and, because the charge did not contain an instruction regarding transferred
intent, the hypothetically correct jury charge analysis is not applicable.  Regarding the aggravated assault charge in
the indictment, Trevino argues that the evidence is insufficient to prove the
offense.  He also argues that the
evidence of identification is insufficient. 
The State counters that the hypothetically correct jury charge would
have included the doctrine of transferred intent and the evidence is sufficient
to convict Trevino of murder.  The State
also responds that evidence is sufficient to support the  aggravated assault conviction.

                                                        A.  Standards of Review

                                                           1.  Legal Sufficiency

A legal-sufficiency challenge calls on us to review
the relevant evidence in the light most favorable to the verdict.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004); Swearingen v. State, 101 S.W.3d 89, 95
(Tex. Crim. App. 2003) (en banc); Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc).  We consider all the evidence that sustains
the conviction, whether properly or improperly admitted.  Conner v. State, 67 S.W.3d 192,
197 (Tex. Crim. App. 2001) (citing Garcia v. State,
919 S.W.2d 370, 378 (Tex. Crim. App. 1994) (en banc)).  Similarly, we consider all the evidence that
sustains the conviction, whether submitted by the prosecution or the defense,
in determining the legal sufficiency of the evidence.  Cook v. State, 858 S.W.2d 467, 470
(Tex. Crim. App. 1993) (en banc); King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000) (en banc).  In
this review, we do not reevaluate the weight and credibility of the evidence,
but rather, act only to ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993) (en banc).  








The legal sufficiency of the evidence is measured
against the elements of the offense as defined by a hypothetically correct jury
charge for the case.  Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Swartz v. State, 61
S.W.3d 781, 786 (Tex. App.BCorpus Christi 2001, pet. ref'd).  This standard of legal sufficiency ensures
that a judgment of acquittal is reserved for those situations in which there is
an actual failure in the State=s proof of the crime rather than a mere error in the
jury charge submitted.  Malik, 953
S.W.2d at 240.  We then determine if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson,
443 U.S. at 319; Johnson, 23 S.W.3d at 7.       

If we reverse a criminal case for legal
insufficiency, we reform the judgment of conviction to reflect conviction for a
lesser offense only if a jury charge on the lesser offense was either submitted
or requested but denied.  Collier v.
State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999).  Otherwise, we vacate the judgment of
conviction for legal insufficiency and order a judgment of acquittal.  Swearingen, 101 S.W.3d at 95.  

                                                         2.  Factual Sufficiency

We are constitutionally empowered to review the
judgment of the trial court to determine the factual sufficiency of the
evidence used to establish the elements of the offense with which Trevino was
charged.  The Texas Court of Criminal
Appeals has restated the factual sufficiency standard of review:








There is only one question to be answered in a
factual sufficiency review:  Considering
all of the evidence in a neutral light, was a jury rationally justified in
finding guilt beyond a reasonable doubt? 
However, there are two ways in which the evidence may be
insufficient.  First, when considered by
itself, evidence supporting the verdict may be too weak to support the finding
of guilt beyond a reasonable doubt. 
Second, there may be both evidence supporting the verdict and evidence
contrary to the verdict.  Weighing all
the evidence under this balancing scale, the contrary evidence may be strong
enough that the beyond‑a‑reasonable‑doubt standard could not
have been met, so the guilty verdict should not stand.  This standard acknowledges that evidence of
guilt can 'preponderate' in favor of conviction but still be insufficient to
prove the elements of the crime beyond a reasonable doubt.  Stated another way, evidence supporting guilt
can 'outweigh' the contrary proof and still be factually insufficient under a
beyond‑a‑reasonable‑doubt standard. 

 

Zuniga v. State, 144 S.W.3d 477, 484‑85 (Tex. Crim. App. 2004).  A clearly wrong and unjust verdict occurs
where the jury's finding is "manifestly unjust," "shocks the
conscience," or "clearly demonstrates bias."  Prible v. State, 175 S.W.3d 724, 731
(Tex. Crim. App 2005).    

When the State bears the burden of proof, the proof
of guilt is factually insufficient if it is so obviously weak as to indicate
that a manifest injustice has occurred or if it is greatly outweighed by
contrary proof.  Zuliani v. State,
97 S.W.3d 589, 593‑94 (Tex. Crim. App. 2003).  In determining the factual sufficiency of the
elements of the offense, we view all the evidence neutrally, not through the
prism of Athe light most favorable to the prosecution.@  Johnson,
23 S.W.3d at 6-7 (citing Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). 








In conducting a factual-sufficiency review, we
review the evidence weighed by the jury that tends to prove a material disputed
fact and compare it with evidence that tends to support disprove it.  Johnson, 23 S.W.3d at 7.  We are authorized to disagree with the fact
finder's determination.  Id.  However, we approach a factual sufficiency
review with appropriate deference to avoid substituting our judgment for that
of the fact finder.  Id.  Our evaluation should not intrude
substantially on the fact finder's role as the sole judge of the weight and
credibility given to witness testimony.  Id.  

We always remain aware of the fact finder=s role and unique position, a position we are unable
to occupy.  Id. at 9.  Exercise of our authority to disagree with
the fact finder's determination is appropriate only when the record clearly
indicates our intervention is necessary to stop manifest injustice.  Id. 

Every fact need not point directly and independently
to the accused's guilt.  Vanderbilt v.
State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981).  A conclusion of guilt can rest on the
combined and cumulative force of all the incriminating circumstances.  Id. 
We reverse a judgment of conviction only if proof of guilt is so
obviously weak and manifestly unjust or the contrary evidence is so strong that
the standard of proof beyond a reasonable doubt could not have been met.  Prible, 175 S.W.3d at 731.    

In conducting a factual sufficiency review, we
review all the evidence.  Cain v.
State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).  In the opinion, we "show our work"
when we consider and address the appellant's main argument for urging
insufficiency of the evidence.  Tex. R. App. P. 47.1; Sims, 99 S.W.3d at 604 ("A
proper factual sufficiency review must include a discussion of the most
important and relevant evidence that supports the appellant's complaint on
appeal.").  This practice benefits
the parties, maintains the integrity of the justice system, and improves
appellate practice.  Sims,
99 S.W.3d at 603.       








If we reverse a criminal case for factual
insufficiency, we vacate the judgment of conviction.  Clewis, 922 S.W.2d at 133-34.  We remand for a new trial a criminal case
reversed for factual insufficiency so a second jury has the chance to evaluate
the evidence.  Swearingen, 101
S.W.3d at 97.      

B.  The Law
Applicable to the Sufficiency Analysis for Murder

1.  The
Hypothetically Correct Charge








A hypothetically correct charge is one that
accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State=s burden of proof or restrict its theories of
liability, and adequately describes the particular offense proof.  Malik, 953 S.W.2d at 240; Cano v.
State, 3 S.W.3d 99, 105 (Tex. App.BCorpus Christi 1999, pet. ref'd).  A hypothetically correct jury charge would
not simply quote from the controlling statute. 
Gollihar v. State, 46 S.W.3d 243, 254 (Tex. Crim. App.
2001).  Its scope is limited by the
statutory elements of the offense as modified by the charging instrument.  See Curry v. State, 30 S.W.3d 394, 404
(Tex. Crim. App. 2000).  Malik
flatly rejects use of the jury charge actually given as a means of measuring
sufficiency of the evidence.  See
Gollihar v. State, 46 S.W.3d 243, 252 (Tex. Crim. App. 2001).  Malik controls sufficiency of the
evidence analysis even in the absence of alleged jury charge error.  Id. at 255.[9]  A hypothetically correct jury charge would
include the doctrine of transferred intent.[10]  See Manrique v. State, 994 S.W.2d 640,
647-48 (Tex. Crim. App. 1999) (en banc); Swartz v. State, 61 S.W.3d at
786.    

2. The Elements of Murder Under Penal Code '19.02(b)(2)BTransferred Intent








 Murder is a
"result of conduct" offense.  Cook
v. State, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994) (en banc).  A person commits the offense of murder if he
intends to cause serious bodily injury and commits an act clearly dangerous to
human life that causes the death of an individual.  Tex.
Pen. Code Ann. ' 19.02(b)(2) (Vernon 2003).  A person acts intentionally or knowingly with
respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result. 
Tex. Pen. Code
Ann. ' 6.03(a), (b) (Vernon 2003) (defining culpable
mental states of intentionally and knowingly); Castillo v. State, 71
S.W.3d 812, 817 (Tex. App.BAmarillo 2002, pet. ref'd).  Further, a person is nevertheless criminally
responsible for causing a result if the only difference between what actually
occurred and what he desired, contemplated, or risked is that:  (1) a different offense was committed; or (2)
a different person or property was injured, harmed, or otherwise affected.  Tex.
Pen. Code Ann. ' 6.04(b)(2) (Vernon 2003).  Under the statute, a defendant can be held
"criminally responsible," that is, guilty for the death of another
even if he did not intend to harm the victim so long as he caused the actual
victim's death while acting with the intent to kill a different person.  Chimney, 6 S.W.3d at 700.  Thus, criminal responsibility via transferred
intent is an issue to be determined during the guilt‑innocence
phase.  Id.  In that regard, all the State need prove is
that the only difference between what actually occurred and what the accused
intended or knew would occur is that he caused the death of someone other than
the one he tried to kill.  Castillo,
71 S.W.3d at 817.  Trevino asserts that
the evidence shows Meza's death was accidental and not intentional. 

3.  The
Elements of Murder Under Penal Code '19.02(b)(1)BSpecific Intent








We must decide whether a rational trier of fact
could have found beyond a reasonable doubt that Trevino (1) intentionally or
knowingly caused the death of Meza, or (2) intended to cause serious bodily
injury and committed an act clearly dangerous to human life that caused the
death of Meza.  Tex. Pen. Code Ann.
' 19.02(b)(1), (2) (Vernon 2003).  A person acts intentionally with respect to
the result of his conduct when it is his conscious objective or desire to cause
the result.  Tex. Pen. Code Ann.
' 6.03(a) (Vernon 2003).  A person acts knowingly with respect to the
result of his conduct when he is aware his conduct is reasonably certain to
cause the result.  Id. at ' 6.03(b) (Vernon 2003).  When a general verdict is returned and the
evidence is sufficient to support a finding under any of the paragraphs
submitted, the verdict will be applied to the paragraph finding support in the
facts.  Amis v. State, 87 S.W.3d
582, 587 (Tex. App.BSan Antonio 2002, pet. ref'd) (citing Manrique,
994 S.W.2d at 642).   

Trevino challenges the sufficiency of the evidence
to prove the requisite culpable mental state for murder.  As is almost always the case, Trevino's
intent must be established by circumstantial evidence.  See Dillon v. State, 574 S.W.2d 92, 94
(Tex. Crim. App. [Panel Op.] 1978).  The
jury may infer the requisite intent from any facts which tend to prove its existence,
including the acts, words, and conduct of the accused, the method of committing
the crime, and the nature of the wounds inflicted on the victims.  Manrique, 994 S.W.2d at 649 (J.
Meyers, concurring); see Conner, 67 S.W.3d at 197.  If a deadly weapon is used in a deadly
manner, the inference is almost conclusive that the defendant intended to
kill.  Adanandus v. State, 866
S.W.2d 210, 215 (Tex. Crim. App.1993); see 
Bell v. State, 501 S.W. 2d 137, 138 (Tex. Crim. App. 1973);
Guerrero v. State, 655 S.W.2d 291, 292 (Tex. App.BCorpus Christi 1983, no writ).  In fact, where a deadly weapon is fired at
close range and death results, the law presumes an intent to kill.  Womble v. State, 618 S.W.2d 59, 64
(Tex. Crim. App. 1981). 

C.  Analysis

1.  Penal Code
'19.02(b)(1)








While stopped at an intersection while driving,
Serrato saw Trevino approach in another vehicle.  Serrato identified Trevino as the
shooter.  Four shots shattered the
driver-side window of Serrato=s vehicle and one pierced the driver-side door.  Serrato sustained bullet wounds to his face
and arm.  Meza sustained bullet wounds to
his upper left torso resulting in his death. 
Trevino continued to shoot at Serrato=s
vehicle while in pursuit.  A rear tire of
Serrato=s vehicle blew out. 
The vehicle also sustained a bullet hole near the rear license
plate.  

From the evidence that Trevino shot five times at
the driver side of Serrato=s vehicle, the jury could conclude beyond a
reasonable doubt that Trevino caused the death of Meza, although he intended to
cause the death of Serrato, under a transferred intent theory.  A rational jury could have reasonably
inferred that Trevino intended to shoot and kill Serrato, saw him in the car,
fired, and instead killed Meza.  A
rational jury, however, could also conclude beyond a reasonable doubt that, by
shooting at the vehicle, both while beside it and in pursuit, Trevino intended
to cause the deaths of the vehicle=s occupants, Serrato and Meza.  The jury could reasonably infer Trevino=s specific intent to kill when he used a deadly
weapon to repeatedly shoot at an occupied vehicle.  See Adanandus, 866 S.W.2d at 215.  Thus, a jury could have found beyond a
reasonable doubt that Trevino intentionally and knowingly caused the death of
Meza by shooting him with a gun.  I conclude
the evidence was legally sufficient to sustain the murder conviction.  See Sanders v. State, 119 S.W.3d 818,
820 (Tex. Crim. App. 2003).  Viewed in
the light most favorable to the verdict, I conclude that the evidence is
legally sufficient to support the murder conviction, both under a transferred
intent theory applying Malik and under a specific intent theory applying
Manrique.  See Malik, 953
S.W.2d at 240; Manrique, 994 S.W.2d at 649. 













That the evidence of guilt was not free of
contradiction and that the credibility of witnesses may have been subject to
question does not require us to conclude that the verdict was factually
insupportable.  See Zuliani, 97
S.W.3d at 593-94.  Those circumstances
merely create issues for the jury to resolve. 
Id.  The jury is the
exclusive judge of the credibility of the witnesses and of the weight to be
given their testimony.  Tex. Code
Crim. Proc. Ann. art.
36.13 (Vernon 1981); Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979). 
We will not reverse unless (1) the evidence of Trevino's guilt, taken
alone, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) the contrary evidence is so strong that the standard of proof beyond a
reasonable doubt could not have been met. 
Zuniga, 144 S.W.3d at 484-85. 
Viewing the relevant evidence in a neutral light, favoring neither the
prosecution nor the defense, and with appropriate deference to the jury=s credibility determinations, I conclude that the evidence
supporting the verdict is not too weak to support the jury's finding of guilt
beyond a reasonable doubt.  Nor is the
weight of the evidence contrary to the verdict strong enough that the State
could not have met its burden of proof.  Id.  I conclude that the evidence is factually
sufficient to support Trevino's conviction.  
          I respectfully disagree
with Trevino=s argument that the absence of transferred intent in
the jury charge precluded a finding of criminal responsibility for murder.  The Malik court itself anticipated the
review of theories that were raised by the evidence, but not charged in the
jury charge, or even in the indictment, where such theories are permitted by
law and authorized by the indictment. 
Manrique, 994 S.W.2d at 647-48; Swartz, 61 S.W.3d at
786.  When the indictment alleges
alternate theories of committing the same offense, it is proper for the jury to
be charged in the disjunctive and to return a general verdict of guilty.  Tex.
Code Crim. Proc. Ann. art. 37.07, ' 1(a) (Vernon Supp. 2005) (verdict must be general);
Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (en
banc).  The conviction will be upheld if
the evidence is sufficient to support a finding of guilt under any one of the
theories submitted.  Kitchens, 823
S.W.2d at 258; see Aguirre v. State, 732 S.W.2d 320, 326 (Tex. Crim.
App. 1987) (en banc); Yandell v. State, 46 S.W.3d 357, 363 (Tex. App.BAustin 2001, pet. ref'd). 

The jury returned a general verdict.  I have concluded that the evidence is
sufficient to support a finding under section '19.02(b)(1).  See Tex.
Pen. Code Ann. '19.02(b)(1) (Vernon 2003).  Thus, the verdict will be applied to the
paragraph finding support in the facts.  Amis,
87 S.W.3d at 587.  

Even so, the evidence is legally and factually
sufficient to support Trevino's conviction under the State's alternate theory.  I turn to the State's alternate
theory.  Kitchens, 823 S.W.2d at
258.

2.  Penal Code
'19.02(b)(2)








A person commits the offense of murder under ' 19.02(b)(2) if he intends to cause serious bodily
injury and commits an act clearly dangerous to human life that causes the death
of an individual.  Tex. Pen.
Code Ann. '19.02(b)(2) (Vernon 2003).  The elements of murder under this section are
that the person (1) intends to cause serious bodily injury, (2) commits an act
clearly dangerous to human life, (3) that causes the death of an
individual.  See id.  "Serious bodily injury" is bodily
injury that creates a substantial risk of death or causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of
any "bodily member or organ." 
Tex. Pen. Code
Ann. ' 1.07(a)(46) (Vernon Supp.
2004-05); Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim.
App. 2001).  The State bears the
burden of showing that an assault caused serious bodily injury.  Moore v. State,
739 S.W.2d 347, 352 (Tex. Crim. App. 1987) (en banc). 








In a prosecution under section 19.02(b)(2), an
intent to kill is not required.  Tex. Pen.
Code Ann. '
19.02(b)(2) (Vernon 2003); Ortiz, 651 S.W.2d at 767 (citing Garcia v.
State, 541 S.W.2d 428, 430 (Tex. Crim. App.1976)); see also Fazzino v.
State, 531 S.W.2d 818 (Tex. Crim. App.1976), overrruled on other
grounds, Dockery v. State, 542 S.W.2d 644, 650 (Tex. Crim. App. 1975).  It is sufficient to show only the intent to
cause serious bodily injury.  Garcia,
541 S.W.2d at 430.  Murder under section
19.02(a)(2) is a "result" type of a crime.  Lugo‑Lugo v. State, 650 S.W.2d 72,
81 (Tex. Crim. App. 1983) (en banc). 
Since an act that was intended to cause serious bodily injury may not
have been intended to be clearly dangerous to human life, the statute requires
that the character of the act be measured by an objective standard.  Id. 
By authorizing a conviction for murder by intending to cause death by an
act, regardless of its magnitude, or by intending to cause serious bodily
injury, by an act clearly dangerous to human life, the legislature has
determined that '19.02(b)(1) and (b)(2) are functionally
equivalent.  Id. A jury may infer
intent from the acts and words of the defendant, the manner in which the
offense was committed, the nature of the wounds inflicted, and the relative
size and strength of the parties.  Nickerson
v. State, 69 S.W.3d 661, 667 (Tex. App.BWaco
2002, pet. ref'd) (citing Patrick v. State, 906 S.W.2d 481, 487 (Tex.
Crim. App. 1995) (en banc)); West v. State, 846 S.W.2d 912, 914 (Tex.
AppBBeaumont 1993, pet. ref'd)).

Based on the allegations of the indictment, the
central issue is whether Trevino intended to cause serious bodily injury to
Meza when he shot at Serrato=s vehicle. 
The jury, as sole trier of the facts, could infer the intent to cause
serious bodily injury from the use of a deadly weapon.  Lugo-Lugo, 650 S.W.2d at 81; see also
Adanandus, 866 S.W.2d at 215.  "Deadly
weapon" is defined as anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.  Tex.
Pen. Code Ann. ' 1.07(a)(17)(B) (Vernon Supp. 2005); Ferrel,
55 S.W.3d at 589.  A "firearm"
is a deadly weapon per se.  Stewart v.
State, 532 S.W.2d 349, 350 (Tex. Crim. App. 1976).  The commission of an act clearly dangerous to
human life suffices to support a conviction for murder under section
19.02(b)(2) of the Texas Penal Code and is not an accidental or reckless
act.  See Tex. Pen. Code Ann.
' 19.02(b)(2); Martinez v. State, 16 S.W.3d
845, 848 (Tex. App.BHouston (1st Dist.) 2000, pet. ref'd).








Viewed both under the Jackson and Zuniga
standards, the evidence showed Trevino intentionally and knowingly fired at
Serrato's vehicle.  Jackson, 443
U.S. 319; Zuniga, 144 S.W.3d at 484-85. 
Firing a weapon into an occupied vehicle is, by the nature of the
conduct, reasonably certain to result in death.  See Medina, 7 S.W.3d at 640.  Trevino continued to shoot while in pursuit
of the occupied vehicle.  I conclude the
evidence was legally sufficient to support the conviction under section
19.02(b)(2).  I further conclude that the
evidence supporting the verdict is not too weak for a jury to find guilt beyond
a reasonable doubt, nor is the weight of the contrary evidence strong enough
that the State could not have met its burden of proof.  I conclude the evidence was factually
sufficient.

Thus, the transferred intent theory is not the only
theory for which there is sufficient evidence to support Trevino's murder
conviction.  The evidence is legally and
factually sufficient to support the conviction applying the proper standards of
review.  I now turn to that part of
Trevino's fourth point of error asserting insufficiency of the evidence to
sustain the aggravated assault conviction.

VII. 
SUFFICIENCY OF THE EVIDENCEBAGGRAVATED ASSAULT

A. 
Hypothetically Correct Jury Charge for Aggravated Assault

                                             1.  Elements of Aggravated Assault

A person commits assault by intentionally,
knowingly, or recklessly causing bodily injury to another, including the person=s spouse.  Tex. Pen.
Code Ann. ' 22.01(a)(1) (Vernon Supp. 2005).  The elements of aggravated assault are that a
person commit assault and either:  (1)
cause serious bodily injury to another; or (2) use or exhibit a deadly weapon
during the commission of the assault.  Id.
at ' 22.02(a) (Vernon Supp. 2005); Ferrel, 55
S.W.3d at 589. 

 








2. 
Definitions of Terms in the Assault Statute

"Bodily injury" means physical pain,
illness, or any impairment of physical condition.  Tex.
Pen. Code Ann. ' 1.07(a)(8) (Vernon Supp. 2005); Nelson v. State,
612 S.W.2d 605, 607 (Tex. Crim. App. [Panel Op.] 1981).  "Serious bodily injury" is bodily
injury that creates a substantial risk of death or causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of
any "bodily member or organ." 
Tex. Pen. Code
Ann. ' 1.07(a)(46) (Vernon Supp. 2004-05); Ferrel,
55 S.W.3d at 589.  The State bears the
burden of showing that an assault caused serious bodily injury.  Moore, 739 S.W.2d at 352.  To show protracted loss of a "bodily
member or organ," the State must show that the injuries were "either
continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy,
lingering, long, long‑continued, long‑drawn, never‑ending,
ongoing, prolix, prolonged, or unending." 
Id.








"Deadly weapon" is defined as anything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.  Tex. Pen.
Code Ann. ' 1.07(a)(17)(B) (Vernon Supp. 2005); Ferrel,
55 S.W.3d at 589.  An object may be a
deadly weapon by its manner of use.  See
Adame v. State, 69 S.W.3d 581, 584 (Tex. Crim. App. 2002) (Meyers, J.,
concurring).  If an actor uses or intends
to use an object in such a way that the object is capable of causing death or
serious bodily injury, it is a deadly weapon.  Id. In determining whether an object is a
"deadly weapon," a jury may consider (1) the physical proximity
between the alleged victim and the object, (2) any threats or words used by the
accused, (3) the size and shape of the object, (4) the potential of the object
to inflict death or serious injury, and (5) the manner in which the
accused allegedly used the object.  Id.  No one factor is determinative.  Id. 
Each case must be examined on its own facts.  Id. 
Finally, the use of a deadly weapon during the commission of an assault
does not create an inference of serious bodily injury.  Moore, 739 S.W.2d at
352.  

3. Identity

Trevino complains that the evidence was legally and
factually insufficient to prove the element of identity, stating that the only
person placing him at the scene was Carol Cruz. 
Where identity is an issue in the case, the identity of the perpetrator
may be proved by direct or circumstantial evidence.  Earls v. State, 707 S.W.2d 82, 85
(Tex. Crim. App. 1986) (en banc).  In our
sufficiency review, we are governed by the fact that the jury is the exclusive
judge of the facts proved, the credibility of the witnesses, and the weight to
be given to the testimony.  Tex. Code
Crim. Proc. Ann. art.
38.04 (Vernon 1979); Earls, 707 S.W.2d at 85.  The jury may believe or disbelieve all or
any part of a witness's testimony, even though the witness's testimony has been
contradicted.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App.1986). 
Reconciliation of conflicts in the evidence is within the exclusive
providence of the jury.  Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App.1996).

 

 








B.  Analysis 

1.  Aggravated
Assault

Serrato testified that Trevino shot him.  Serrato sustained five wounds:  two shots on his left arm, one on his lip,
one on his chest, and one on his right arm. 
When bullets struck, Serrato felt like he was drowning and could not
move his left arm.  Serrato saw a bone
protruding from his arm.  He drove away
from the scene "running for [his] life."  Serrato testified that his lip was
"blown off."  He underwent
surgery for his injuries.  At the time of
trial, Serrato testified he was disabled. 


A hypothetically correct jury charge would instruct
the jury to find Trevino guilty of aggravated assault of Serrato if it found
that Trevino used or exhibited the semiautomatic gun as a deadly weapon.  See Tex.
Pen. Code Ann. _ 22.02(a) (Vernon Supp. 2005); see also Ferrel, 55 S.W.3d at
589; Malik, 953 S.W.2d at 240.  

2.  Identity








            The evidence showed that an
eyewitness to the shooting, Carol Cruz, was not able to identify Trevino from a
photo lineup a few days after the shooting. 
At the trial, Cruz identified Trevino as the shooter.  Serrato testified that Trevino was the
shooter.  Serrato identified Trevino to
law enforcement immediately after the offense. 
The evidence at trial showed that Trevino, not anyone else, was the
shooter.  Considering all the
evidence that sustains the conviction in the light most favorable to the
verdict, measured by the hypothetically correct jury charge for aggravated
assault, I find that a rational trier of fact could have found beyond a
reasonable doubt that Trevino was the shooter.  Jackson, 443 U.S. at 319.  Viewed in a neutral light and with
appropriate deference to the jury's credibility determinations, I conclude that
the evidence supporting Trevino as the shooter is not too weak to support the
jury's finding of guilt beyond a reasonable doubt.  See 
Zuniga, 144 S.W.3d at 484-85; see Earls, 707 S.W.2d at
85.  Further,  the weight of the evidence contrary to the
verdict is not such that the State could not have met its burden of proof at
trial.  See Zuniga, 144 S.W.3d at
484-85. 

3. 
Disposition

The jury could have inferred that Trevino's use of
the semiautomatic gun was capable of causing Serrato's death or serious
bodily.  The jury could have found beyond
a reasonable doubt that Trevino used a deadly weapon to assault Serrato.  Regarding identity, the jury was free to
accept or reject the evidence before it. 
The jury was the sole judge of the credibility of the witnesses.  The jury resolved the issues before it and
concluded Trevino was the shooter.   

Considering all the evidence that sustains the
conviction, measured against the deadly weapon element of aggravated assault as
defined by the hypothetically correct jury charge for the offense, I conclude
that a rational trier of fact could have found beyond a reasonable doubt all
the elements of aggravated assault. 
Thus, I conclude the evidence was legally and factually sufficient.  See Jackson, 443 U.S. at 319; Zuniga,
144 S.W.3d at 484-85.  








Accordingly, I concur with the majority's decision
to overrule Trevino=s fourth point of error.

VIII. 
CONCLUSION

I respectfully agree to grant the motion for
rehearing, overrule Trevino's points of error, 
and affirm the judgment.

ERRLINDA CASTILLO

Justice

Publish.

Tex. R. App. P.
47.2(b).

 

Concurring
Opinion delivered and filed

this
8th day of June, 2006.

 











1. Importantly, Light is not
limited to factual sufficiency review.  Light
v. State, 15 S.W.3d 104, 108 (Tex. Crim. App. 2000).  





2. The majority and I diverge with
respect to application of these principles. 
I note that this appeal on original submission was one of three cases in
which the panel majority has written a 
"concurring opinion."  See
Mata v. State, No. 13-02-165-CR, 2005 Tex. App. LEXIS 3679 (Tex. App.BCorpus Christi, May 12, 2005, no
pet.); Elizondo v. State, No. 13-01-619-CR, 2005 Tex. App. LEXIS 3680
(Tex. App.BCorpus Christi, May 12, 2005, no
pet.).  Including the opinion in the
present appeal on original submission, the three majority concurring opinions
are virtually identical.  Elizondo
and the present appeal involved multiple counts, multiple victims, and
convictions of murder and aggravated assault. 
Mata involved a murder conviction.  Because the procedure of handing down an
opinion without compliance with rules 47.1 and 47.4 has now occurred in three
appeals involving murder convictions, I respectfully conclude that the
procedure is an improper departure from the accepted and usual course of
judicial proceedings and, where it can be remedied as here, we must do so
without pause.  See Tex. R. App. P. 66.3(f) (providing
reasons for granting review by the Texas Court of Criminal Appeals of our
opinions).  In his motion for rehearing
in this case, Trevino correctly points out that the concurrence on original
submission was the true majority opinion and that it rejected the only analysis
of the points of error raised.  The State
filed a response as we requested.  See
Tex. R. App. P. 49.2.  The State generally recognizes that, on
original submission, the majority concurred in the judgment only.





3. Section 19.02(b)(2) of the Texas
penal code states that a person commits an offense if he intends to cause
serious bodily injury and commits an act clearly dangerous to human life that
causes the death of an individual.  See
Tex. Pen. Code Ann. ' 19.02(b)(2) (Vernon 2003).





4. Section 19.02(b)(1) of the Texas
penal code states that a person commits an offense if he intentionally or
knowingly causes the death of an individual. 
See Tex. Pen. Code
Ann. ' 19.02(b)(1) (Vernon 2003).





5. Although the legislature did not
define the term "same criminal transaction," in Feldman v.
State, 71 S.W.3d 738, 752-53 (Tex. Crim. App. 2002), a capital murder case,
the court of criminal appeals interpreted that phrase to mean "a
continuous and uninterrupted chain of conduct occurring over a very short period
of time . . . in a rapid sequence of unbroken events."  Feldman, 71 S.W.3d at 752-53 (citing Jackson
v. State, 17 S.W.3d 664, 669 (Tex. Crim. App. 2000)); see also Rios v.
State, 846 S.W.2d 310, 311‑12 (Tex. Crim. App. 1992), cert. denied,
507 U.S. 1051 (1993); Vuong v. State, 830 S.W.2d 929, 941 (Tex. Crim.
App. 1992) (en banc), cert. denied, 506 U.S. 997 (1992).





6. Article 21.24 (a) of the Code of
Criminal Procedure states:

 

(a) Two or more offenses may be
joined in a single indictment, information, or complaint, with each offense
stated in a separate count, if the offenses arise out of the same criminal
episode, as defined in Chapter 3 of the Penal Code.

 

Tex. Code Crim. Proc. Ann. art. 21.24(a) (Vernon 1989).  





7. 
In the motion, Trevino requested the Court to quash count one in the
indictment because the State relied on section 19.02(b)(2) of the Texas penal
code for a result-oriented murder charge. 






8. Section 19.02(b)(2) of the Texas
penal code reads as follows:

 

A person commits an offense if he: 

 

(1) intentionally or knowingly
causes the death of an individual;

 

(2) intends to cause seriously
bodily injury and commits an act clearly dangerous to human life that causes
the death of an individual; or 

 

(3) commits or attempts to commit a
felony, other than manslaughter, and in the course of and in furtherance of the
commission or attempt, or in immediate flight from the commission or attempt,
he commits or attempts to commit an act clearly dangerous to human life that
causes the death of an individual.  

 

Tex.
Pen. Code Ann. ' 19.02(b)(2) (Vernon 2003).





9. Although Malik involved a
challenge to the legal sufficiency of the evidence, I discern nothing in the
opinion that limits its holding to that category of sufficiency
challenges.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Reaves v. State, 970
S.W.2d 111, 116 (Tex. App.BDallas 1998, no pet.). 
This Court measures the factual sufficiency of the evidence against a
hypothetically correct jury charge.  Adi
v. State, 94 S.W.3d 124, 131 (Tex. App.BCorpus Christi 2002, pet. ref'd).





10. This statutory principle of
"transferred intent" is raised when there is evidence a defendant
with the required culpable mental state intends to injure or harm a specific
person but injures or harms a different person or both.  Manrique v. State, 994 S.W.2d 640, 647
(Tex. Crim. App.1999) (en banc) (J. McCormick, concurring).